IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DISH NETWORK CORPORATION | ) | |
| (F/K/A ECHOSTAR COMMUNICATIONS | ) | |
| CORPORATION), ECHOSTAR DBS | ) | |
| CORPORATION, ECHOSTAR | ) | |
| TECHNOLOGIES LLC (F/K/A | ) | |
| ECHOSTAR TECHNOLOGIES | ) | |
| CORPORATION), ECHOSPHERE LLC, | ) | |
| AND DISH NETWORK LLC (F/K/A | ) | |
| ECHOSTAR SATELLITE LLC), | ) | C.A. No. 08-327-JJF |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| TIVO INC., | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF TIVO'S MOTION TO DISMISS**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

IRELL & MANELLA LLP
Morgan Chu
Christine Byrd
Laura W. Brill
Alexander C. Giza
William D. Bowen
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated: July 7, 2008

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II.  NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 2

III.  SUMMARY OF ARGUMENT .............................................................................. 3

IV.  STATEMENT OF FACTS .................................................................................... 4

V.  ARGUMENT .................................................................................................... 8

    A.  This Court Has Discretion To Decline Jurisdiction Over EchoStar's
        Declaratory Judgment Claim. ............................................................... 8

    B.  This Court Should And Must Exercise Discretion To Decline
        Jurisdiction............................................................................................ 8

        1.  EchoStar's Forum Shopping, Which Will Result In
            Inevitable Delay And Confusion Regarding The Texas
            Contempt Proceeding, Should Not Be Allowed. ..................... 9

        2.  Allowing Jurisdiction Here Would Have A Chilling Effect
            On Litigants In Contempt Proceedings. ................................ 10

        3.  Exercising Jurisdiction Here Would Waste Judicial
            Resources In A Complex Patent Matter And Would Be
            Inconsistent With Other Factors Relating To The
            Appropriate Exercise Of Discretion. ..................................... 13

VI.  CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Auto. Ins. Co. v. Freundt,*
    103 F.2d 613 (7th Cir. 1939)............................................................................8

*Apotex Inc. v. Sanofi-Synthelabo,*
    386 F. Supp. 2d 549 (S.D.N.Y. 2005) .............................................................9

*Bell Atl. Corp. v. MFS Commc'ns Co., Inc.,*
    901 F. Supp. 835 (D. Del. 1995) ...................................................................11

*Brillhart* v. *Excess Ins. Co. of Am.,*
    316 U.S. 491 (1942) ........................................................................................8

*Crosley Corp. v. Hazeltine Corp.,*
    122 F.2d 925 (3d Cir. 1941)..........................................................................10

*EchoStar Techs. Corp. v. TiVo Inc.,*
    No. 5-cv-00081-DF-CMC (E.D. Tex. filed April 29, 2005)...........................4

*Exxon Corp. v. U.S. Dept. of Energy,*
    594 F. Supp. 84 (D. Del. 1984) ................................................................9, 10

*Fairplay Elec. Cars, LLC v. Textron Innovations, Inc.,*
    431 F. Supp. 2d 491 (D. Del. 2006) ..............................................................13

*Farrell Lines Inc. v. Columbus Cello-Poly Corp.,*
    32 F. Supp. 2d 118 (S.D.N.Y. 1997) ..............................................................9

*Hurley v. Columbia Cas. Co.,*
    976 F. Supp. 268 (D. Del. 1997) ....................................................................8

*In re March,*
    988 F.2d 498 (4th Cir. 1993).........................................................................10

*In re Reliance Secs. Litig.,*
    No. Civ. A. 99-858-JJF, 2003 WL 1943320 (D. Del. Apr. 17, 2003)............10

*Int'l Sec. Exch., LLC v. Chi. Bd.. Options Exch. Inc.,*
    No. 06-Civ.-13445 (RMB)(THK), 2007 WL 1541087 (S.D.N.Y. May 24,
    2007)...............................................................................................................16

*Mann Mfg. Inc. v. Hortex, Inc.,*
    439 F.2d 403 (5th Cir. 1971)...........................................................................9

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118, 127 S. Ct. 764 (2007) .........................................................8, 11

*MKS Instruments, Inc. v. Advanced Energy Indus., Inc.,*
    No. Civ. A. 03-469-JJF, 2004 WL 253470 (D. Del. July 16, 2004) ..............13

Page(s)

*Nat'l Seminars, Inc. v. Dun & Bradstreet Corp. Found.*,
No. 89-2112, 1989 WL 106714 (D. Kan. Aug. 25, 1989) ...............................................13

*Nationwide Life Ins. Co. v. Koresko*,
No. 2:05cv1066, 2007 WL 2713783 (S.D. Ohio Sept. 14, 2007) ...................................15

*Obsolete Ford Parts v. Ford Motor Co.*,
306 F. Supp. 2d 1154 (W.D. Okla. 2004) ........................................................................9

*Optical Recording Corp. v. Capitol-EMI Music, Inc.*,
803 F. Supp. 971 (D. Del. 1992) ...................................................................................13

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
497 F.3d 1271 (Fed Cir. 2007)......................................................................................11

*Sweetheart Plastics, Inc. v. Ill. Tool Works, Inc.*,
439 F.2d 871 (1st Cir. 1971) .........................................................................................13

*Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.*,
887 F.2d 1213 (3d Cir. 1989).....................................................................................9, 14

*TiVo Inc. v. EchoStar Commc'ns Corp.*,
446 F. Supp. 2d 664 (E.D. Tex. 2006).....................................................................1, 2, 4

*TiVo Inc. v. EchoStar Commc'ns Corp.*,
516 F.3d 1290 (Fed. Cir. 2008)................................................................................1, 3, 5

*Transmation, Inc. v. Gay Eng'g & Sales Co.*,
336 F. Supp. 959 (E.D. Tex. 1971) ...............................................................................14

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995).................................................................................................8, 13

## Statutes

28 U.S.C. § 2201 .................................................................................................................8

## I.    INTRODUCTION

This case involves a bold effort by an adjudicated patent infringer, EchoStar Communications Corporation, to escape from and undermine the jurisdiction and injunction of the court in which it was found liable for willful patent infringement by raising here in the District of Delaware issues that are already before the Eastern District of Texas in a matter that the Texas court has been presiding over since 2004.  The patent at issue is fundamental to the functionality of digital video recorders ("DVRs") and belongs to DVR industry leader, TiVo, Inc. ("TiVo").

Plaintiffs in this case are the corporate successor to and affiliates of EchoStar Communications Corporation (collectively, "EchoStar").  Following two years of litigation, including a 2 1/2 week jury trial, a full bench trial on equitable issues, and a lengthy hearing on injunctive relief, the Honorable David Folsom of the United States District Court for the Eastern District of Texas entered judgment in favor of TiVo and permanently enjoined EchoStar, *inter alia*, from continued infringement of TiVo's groundbreaking U.S. Patent No. 6,233,389 (the "Barton Patent").  *TiVo Inc. v. EchoStar Commc'ns Corp.*, 446 F. Supp. 2d 664, 665 (E.D. Tex. 2006) ("Texas Action").  The judgment and injunction were affirmed in relevant part by the Federal Circuit following a two-year appeal process.  *TiVo Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290 (Fed. Cir. 2008), *reh'g and reh'g en banc denied* (Apr. 11, 2008) (No. 2006-1574).  EchoStar's liability to TiVo arising out of the Texas case now exceeds $100 million, and may increase substantially in the coming months.

The injunction, now in full force and effect, bars EchoStar, *inter alia*, from making, using and selling the DVR models found to infringe in the Texas Action, as well as "all other products" that are no more than colorably different from the products already found to infringe and that still infringe the Barton Patent.  Exhibit A to Declaration of William D. Bowen at 2 (("Bowen Decl."), filed concurrently) (Amended Final Judgment and Permanent Injunction).  Despite the injunction, EchoStar continues to sell DVRs, arguing that it has designed around the patent.  In addition, EchoStar continues to supply DVR functionality to units already found to infringe,

despite a clear order of the Texas court to cease such functionality in those units. EchoStar also sells new DVR units, making unsubstantiated claims that it has designed around the patent.

TiVo has made clear to the Texas court that it believes that EchoStar has violated the Texas court's injunction and that issues concerning the design-around and EchoStar's other violations of the injunction should be decided in the context of a contempt proceeding (the "Texas Contempt Proceeding").

The declaratory judgment action that EchoStar now brings before this Court (the "Delaware Action") involves the same parties, the same patent, and the same products that are at issue in the Texas Contempt Proceeding. The "dispute" EchoStar alleges in this Delaware Action is based on nothing more than statements made by TiVo in or relating to the ongoing Texas proceedings in which TiVo has informed the Texas court that TiVo has not seen anything to persuade it that the alleged design-around has been successful and that it was looking forward to resolving these issues in the Texas Contempt Proceeding. Allowing EchoStar to bring an action in Delaware under these circumstances would enable EchoStar, and any other enjoined infringer, to start a new action in a new forum to avoid or delay a pending contempt proceeding. A willful infringer should not be permitted to put a patent owner through years of litigation, a full jury trial and lengthy appeal, only to then seek to eliminate the force of an affirmed injunction by relitigating the merits action in a new court. The controversy alleged to exist in this case is already pending in Texas. Under these circumstances, this Court should and must decline to exercise jurisdiction over this case.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

In September 2006, following two years of litigation in the United States District Court for the Eastern District of Texas, including a 2 1/2 week jury trial and more than 800 docket entries, the Honorable David Folsom entered a final judgment and permanent injunction against EchoStar for its willful infringement of the Barton Patent that is fundamental to DVR technology. 446 F. Supp. 2d at 665. On January 31, 2008, the Federal Circuit affirmed the judgment and injunction with respect to numerous infringing EchoStar DVR products. 516 F.3d

at 1312. The patent has survived validity challenges in the PTO and in the Texas Action.
Bowen Decl. Ex. B at 5-6 (Jury Verdict); *id.* Ex. C (Notice of Intent to Issue Ex Parte
Reexamination Certificate). The Federal Circuit's mandate issued April 18, 2008, *id.* Ex. D,
placing back before the Texas district court the question whether EchoStar is now in contempt of
the injunction.

At a status conference in Texas on May 30, 2008, the parties and Judge Folsom discussed
in detail two different bases upon which TiVo would request a determination of contempt. *Id.*
Ex. E (April 23, 2008 Order); *id.* Ex. F (May 30, 2008 Proceedings). One of these bases is that
products that EchoStar claims to be "new" are not new, or at best are no more than colorably
different than those already found to infringe, and therefore constitute a continuing infringement
punishable as contempt. *See id.* Ex. F at 5:6-10 (May 30, 2008 Proceedings).

Less than an hour after the status conference concluded, and with these matters under
submission in Texas, EchoStar filed this declaratory judgment action here in Delaware,
attempting to avoid the jurisdiction of the Texas district court. (D.I. # 1) ("Delaware Action").
This action concerns the very same patent, parties, and products that are the subject of the Texas
Contempt Proceeding. *See id.*

TiVo now moves this Court to dismiss EchoStar's complaint pursuant to Federal Rule of
Civil Procedure Rule 12(b) because this Court should not assume jurisdiction over EchoStar's
discretionary claim for declaratory relief in the circumstances presented here.

## III.    SUMMARY OF ARGUMENT

The complaint in this case asserts a single cause of action, asking for a declaration that
products that are at issue in the Texas Contempt Proceeding do not practice TiVo's Barton
Patent. Because the "dispute" alleged here is indistinguishable from the dispute TiVo is asking
the Texas court to resolve in the context of the Texas Contempt Proceeding, and because the
Texas court has spent years becoming familiar with the patent issues and technology in question,
and because the filing of this lawsuit is the type of manipulative "procedural fencing" that seeks

to delay and undermine the judgment of another federal court, this Court should decline

jurisdiction over the complaint and dismiss this action.

## IV.     STATEMENT OF FACTS

Founded in 1997, TiVo is the award-winning inventor of the first functional consumer

DVR, recognized by the editors of PC World as the third-greatest "gadget" of the last fifty years

and by CNet as the second top product of the past decade.  Bowen Decl. Ex. G

(www.pcworld.com/article/id,123950-page,2/article.html; www.cnet.com/1990-11136_1-

6312246-1.html (both last visited July 7, 2008)).  Few devices have had as much impact on

consumer entertainment as the TiVo DVR.

TiVo's co-founder and Chief Technology Officer, Jim Barton, and his co-inventors, made

the low-cost consumer DVR possible and patented his invention in the Barton Patent.  The PTO,

in a reexamination proceeding initiated by EchoStar after the jury trial originally was slated to

begin, confirmed the validity of every claim of the Barton Patent.  *Id.* Ex. C (Notice of Intent to

Issue Ex Parte Reexamination Certificate).

After EchoStar began its willful infringement of TiVo's Barton Patent and negotiations

relating to a business arrangement failed, TiVo filed suit against EchoStar in district court in

Texas.[1]  A jury in the Texas Action found EchoStar liable for willfully infringing the Barton

Patent and awarded TiVo $73,991,964 in compensatory damages.  446 F. Supp. 2d at 665.  The

Texas court held a two day bench trial on EchoStar's equitable defenses, all of which the court

rejected.  *See id.* Ex. I at 2, 11 (Findings of Fact and Conclusions of Law).

Following the verdict, Judge Folsom entered a permanent injunction against EchoStar.

The injunction has two parts.  One part requires EchoStar to "disable the DVR functionality" in

all DVR models judged infringing in the Texas Action that have been placed with end users,

with the exception of approximately 192,000 units for which TiVo had been awarded lost profits.

*Id.* Ex. A at 2  (Amended Final Judgment and Permanent Injunction).  The other part requires

---

[1] Finding Texas to be a congenial forum, EchoStar initiated its own patent infringement
case against TiVo also in the Eastern District of Texas.  *See generally id.* Ex. H (*EchoStar Techs.
Corp. v. TiVo Inc.*, No. 5-cv-00081-DF-CMC (E.D. Tex. filed April 29, 2005)).

EchoStar to cease "making, using, offering to sell, selling, or importing into the United States," models of EchoStar DVR receivers that the jury had found to be infringing. *Id.* This part of the injunction also extends to "*all other products* that are only colorably different" from the products already found to infringe. *Id.* (emphasis added). The declaratory relief EchoStar seeks here overlaps with at least this second part of the injunction.

The Federal Circuit in a published opinion affirmed the judgment of infringement as to two of the claims of the Barton Patent, and affirmed in full the award of damages and injunction. 516 F.3d at 1312. The mandate issued on April 18, 2008, and the case returned to the district court in Texas for further adjudication, including any necessary contempt proceedings. *See id.*; Bowen Decl. Ex. D (Mandate). EchoStar sent letters to its distributors stating that the injunction does not apply to its products (with the exception of certain model numbers covered by the 192,000 exemption), encouraging those distributors to continue to deploy infringing DVR models, without disabling the DVR functionality as required by the Texas Court's injunction. Bowen Decl. Exs. T & U. EchoStar did not seek a modification of the injunction but instead resorted to self help, simply proclaiming the injunction inapplicable in light of changes EchoStar had made to its DVR software.

Following the issuance of the mandate, the parties submitted letter briefs to the district court in Texas addressing procedures for resolving the open issues. TiVo requested that the Texas court hold its contempt proceedings in phases. *Id.* Ex. J at 1 (May 16, 2008 Letter to Hon. David Folsom). In the first phase, the Court would address whether EchoStar is in contempt of the portion of the injunction requiring it to disable the DVR functionality in specific DVR model numbers listed in the injunction. *Id.* Following a finding on that issue, the court would address in a second motion whether EchoStar should be held in contempt because, despite an alleged design-around, EchoStar's "new" software is neither new nor colorably different from the software in products already found to infringe. *Id.*

On May 30, 2008, the Texas court held a status conference to address the parties' procedural proposals. During that status conference, TiVo indicated that it intended to file a

contempt motion to address EchoStar's contention that it had designed around the Barton Patent. *Id.* Ex. F at 5:6-10 (May 30, 2008 Proceedings). EchoStar acknowledged that the Texas court would not preclude TiVo from seeking contempt on this basis. *Id.* at 7:8-10. The parties addressed at length the scope and schedule of contempt motions and associated discovery. *See id.* at 7:24-8:1 (EchoStar's counsel: "If they intend to proceed through contempt, we think it would be very helpful for them to file a motion."); *id.* at 8:11-12 (EchoStar's counsel: discussing motion concerning "contempt on the design-around"); *id.* at 15:15-17 & 16:7-16 (TiVo's counsel: addressing discovery needed for contempt motion on alleged design-around).

The Texas court subsequently issued an order that set a September 4 hearing date to address whether EchoStar complied with the injunction by disabling DVR functionality on models identified in the injunction order. *Id.* Ex. K (June 5, 2008 Order). The Texas court also indicated that it would take up other contempt theories concerning EchoStar's attempted design-around after the resolution of the first issue. *Id.*

Less than an hour after the May 30 status conference concluded in Texas, EchoStar filed this Delaware Action. *See* Complaint at 5 (D.I. #1). EchoStar asserts a single claim for declaratory relief, asking this Court to rule that the very same products that will be at issue in the Texas Contempt Proceeding do not infringe the Barton Patent. *Compare* Complaint ¶ 18 (D.I. #1) (alleging differences between products already found to infringe and products that EchoStar contends have designed around the patent) *with* Bowen Decl. Ex. L at 4 (EchoStar Defendants' Opposition to TiVo's Motion for EchoStar To Be Held In Contempt for Violation of This Court's Permanent Injunction) (argument concerning same alleged design-around); *and id.* Ex. M at 3 (May 23, 2008 Letter to Hon. David Folsom) (same).

The only purported "controversy" identified in the Complaint consists of statements allegedly made, not to EchoStar, but either directly to the Texas court or to third parties. Each of these statements was directly tied to the Texas court's injunction or to matters decided or to be decided in Texas. *Compare* Complaint ¶ 21 (citing, *inter alia*, statements allegedly made on March 5 and 12, 2008, and May 16 and 28, 2008) *with* Bowen Decl. Ex. N at 4 (transcript of

March 5, 2008 conference call) ("We are confident that the courts will enforce the judgment and the injunction and the full impact of these will become clear."); *id.* Ex. O at 1 (transcript of March 11, 2008 Bear Stearns Media Conference) (stating with respect to EchoStar's alleged design-around: "we feel very confident that in the end, the full-out impact of this injunction is going to be understood, and it's going to be quite far ranging."); *id.* Ex. J at 1 (May 16, 2008 letter from TiVo's counsel to Judge Folsom) (requesting "a hearing at the earliest possible date to determine whether EchoStar should be held in contempt" and requesting permission to serve limited discovery relating to contempt issues); *id.* Ex. P at 4 (transcript of May 28, 2008 conference call) ("We have informed the District Court [in Texas] that based on what we've been provided by EchoStar to date, we believe that EchoStar's modified software does not avoid infringement. We are pleased that the District Court is moving forward with respect to the remaining issues and has scheduled a status conference later this week.").[2]

As explained in more detail below, given that identical issues are and will be before the Texas court, EchoStar should not be permitted to interfere with the jurisdiction and judgment of that court by filing a separate action here. The time for EchoStar to argue for a change of venue from the Texas court has long since past. The exercise of jurisdiction over this Delaware Action will result in inevitable delay and interference with the Texas Contempt Proceedings, as the essence of this suit is to present identical issues in an alternative forum in the hopes of creating either delay or inconsistent rulings that will undermine the Texas Contempt Proceedings. Furthermore, EchoStar should not be permitted to require TiVo to litigate in Delaware the same issues it is litigating in Texas, with the sole "dispute" in Delaware being TiVo's factual statements about the Texas proceedings. Finally, EchoStar should not be permitted to impose a

---

[2] The Complaint also relies on an allegation concerning a January 31, 2008 press statement by TiVo. EchoStar claims that in this statement TiVo asserted that EchoStar's statements about its design-around "would 'turn[] out to be false and misleading.'" Complaint ¶ 21. That is not what the press reported and not what TiVo said. The press reported on an email statement by TiVo stating merely that EchoStar's past statements relating to the infringement of the TiVo patent had turned out to be false and misleading. *Id.* Exs. Q, R, S (Reuters article; Bloomberg article; LA Times article). This statement cannot reasonably be construed as a threat to file a new action regarding EchoStar's purported design-around.

complex patent trial on this Court and its potential jurors when the Texas court is fully versed in and prepared to resolve these issues. These efforts are antithetical to the policies of the Declaratory Judgment Act and are grounds for dismissal.

## V.    ARGUMENT

### A.    This Court Has Discretion To Decline Jurisdiction Over EchoStar's Declaratory Judgment Claim.

The Declaratory Judgment Act gives courts discretion to decline jurisdiction when appropriate. *Hurley v. Columbia Cas. Co.*, 976 F. Supp. 268, 275 (D. Del. 1997); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act."); *Brillhart* v. *Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942) (affirming district court dismissal of declaratory claim because "it was under no compulsion to exercise [its] jurisdiction."); *Am. Auto. Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir. 1939) (upholding district court's dismissal of declaratory action where other suit was pending because "[t]he wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum"). *See also* 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction . . . any court . . . *may* declare the rights and other legal relations of any interested party seeking such declaration.") (emphasis added).

The exercise of judicial discretion may also be "hardened by experience into rule." *Wilton*, 515 U.S. at 289. Thus, in appropriate circumstances, a court must decline to exercise declaratory judgment jurisdiction. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764, 777 (2007) (remanding for determination whether the district court "should, or must, decline to issue the requested declaratory relief").

### B.    This Court Should And Must Exercise Discretion To Decline Jurisdiction

This Court should decline to exercise jurisdiction here for numerous reasons. First, EchoStar is engaging in improper forum shopping that will undermine the jurisdiction and injunction of the Texas court. Second, permitting this declaratory judgment action would have a

chilling effect on a vindicated patent owner's ability to seek contempt without fear of spawning duplicative parallel proceedings. Third, the Texas court has unique expertise regarding the matters that EchoStar seeks to adjudicate here, and allowing a new case to go forward here would result in a waste of judicial resources and would be inconsistent with other factors relating to the exercise of declaratory relief.

> 1. **EchoStar's Forum Shopping, Which Will Result In Inevitable Delay And Confusion Regarding The Texas Contempt Proceeding, Should Not Be Allowed.**

Declaratory judgment jurisdiction should be declined where the suit is merely an improper attempt at forum shopping. *Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1225 (3d Cir. 1989). "Courts look with disapproval upon any attempt to circumvent the laudable purposes of the Act, and seek to prevent the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for res judicata." *Id.* (quoting 6A J. Moore, J. Lucas & G. Girtheer, Jr., Moore's Federal Practice ¶ 57.08[5], at 57-50 (2d ed. 1987)); *Obsolete Ford Parts v. Ford Motor Co.*, 306 F. Supp. 2d 1154, 1157 (W.D. Okla. 2004) ("[W]ell-founded procedural fencing accusations may tip the balance against an otherwise proper declaratory judgment action.").

Courts will not countenance declaratory actions that are an attempt to avoid the proper jurisdiction of another court. *Apotex Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d 549, 551 (S.D.N.Y. 2005) ("[C]ourts should be dubious of declaratory judgment actions when the plaintiff files suit to interfere with an action already filed.") (citing *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 124 (S.D.N.Y. 1997)). "When a court is confronted with an action that would involve it in a serious interference with or usurpation of [its] continuing power, 'considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction." *Exxon Corp. v. U.S. Dept. of Energy*, 594 F. Supp. 84, 89-90 (D. Del. 1984) (quoting *Mann Mfg. Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971) and citing additional authorities).

The power of a court to supervise and enforce its injunctions is part of a court's "continuing power," *Exxon*, 594 F. Supp. at 89, and it is not proper for another district court to entertain an action that would undermine that authority. *See, e.g.*, *In re March*, 988 F.2d 498 (4th Cir. 1993) (affirming injunction to prevent "end run" around district court's authority); *In re Reliance Secs. Litig.*, No. Civ. A. 99-858-JJF, 2003 WL 1943320, at *1 -2 (D. Del. Apr. 17, 2003) (Farnan, J.) (granting defendants' motion to enjoin action in Illinois state court to "protect this Court's Final Judgment."); s*ee generally Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 927 (3d Cir. 1941) (inappropriate to file second patent lawsuit concerning matters pending in earlier filed action).

There is no question that this Delaware Action is classic forum shopping that would create delay and confusion with respect to the Texas Contempt Proceeding. Less than an hour after a status conference during which both parties discussed the Texas court's adjudication of the issue of contempt, EchoStar filed this action concerning the identical issues in Delaware. The allegations of this Delaware Action concerning the merits of EchoStar's alleged design-around are identical to the arguments EchoStar is making in Texas. *Compare* Complaint ¶ 18 (D.I. 1); *with* Bowen Decl. Ex. L at 4; *and id.* Ex. M at 3. While it may not be surprising that EchoStar would prefer to be in any court other than the one in which it was already found to be a willful patent infringer, EchoStar's desire to improve its odds in future proceedings by changing the decision maker is not a reasonable basis for this court's exercise of jurisdiction. The Texas court has expended substantial resources in litigating the Texas Action and has entered an injunction that the Federal Circuit upheld in full on appeal. The Texas court should be permitted to enforce that injunction and resolve related issues that are properly before it without parallel proceedings brought in a separate forum for improper tactical reasons.

2.    **Allowing Jurisdiction Here Would Have A Chilling Effect On Litigants In Contempt Proceedings.**

Declaratory judgment suits should not be used to chill litigation in other proceedings. A controversy already pending in one forum is not a basis for asserting jurisdiction or creating a

"controversy" giving rise to a new action in another forum. *Bell Atl. Corp. v. MFS Commc'ns Co., Inc.*, 901 F. Supp. 835, 850 (D. Del. 1995) (declining to exercise jurisdiction where declaratory judgment claim was based on statements related to other proceedings).

In *Bell Atlantic*, declaratory plaintiff Bell Atlantic brought a declaratory antitrust action against competitor MFS Communications Company. *Id.* at 839. Bell Atlantic alleged that several public statements by MFS amounted to an accusation of anticompetitive conduct. It cited language MFS submitted as part of a public comment on a waiver request, containing "the rhetoric and terminology that might be found in an antitrust suit." *Id.* at 844.[3] It also referred to a letter to the FCC making statements about what it describes as "anticompetitive conduct." Finally, it cited a letter sent directly from the President of MFS to a Bell Atlantic subsidiary, stating that "[t]he anti-competitive nature of these past and proposed actions are clear." *Id.*

The Court held that none of these allegations indicated a likelihood of future suit, and found Bell's claims non-justiciable. *Id.* at 845.[4] The court also indicated that even if the allegations had constituted a threat, it would have declined jurisdiction "for fear of chilling vigorous advocacy." *Id.* at 850. Because three of the four statements stemmed from administrative proceedings, and the accused rhetoric was "tied . . . directly" to these proceedings,

---

[3] For example, in arguing against the waiver MFS asserted "[a]s long as Bell Atlantic retains its entrenched monopoly power in the local exchange market, the potential for abuse precludes positive consideration of its unlimited interLATA waiver. MFS' [sic] experience with Bell Atlantic confirms that the local bottlenecks still confer an unfair competitive advantage and that Bell Atlantic has been particularly willing to abuse that advantage." *Id.* at 844 n.5.

[4] TiVo believes that under a correct application of the case or controversy requirement, this Court lacks Article III jurisdiction over this case and that this case is distinguishable from *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764 (2007), because, among other things, it involves statements relating to ongoing judicial proceedings, whereas in *MedImmune*, the statements creating the dispute related to an entirely new dispute concerning a newly issued patent and a product that had never been the subject of litigation. Nonetheless, in light of the closeness of the Article III question in the aftermath of *MedImmune*, and the strength of the argument for discretionary dismissal on the facts of this case, TiVo brings this motion based on the court's discretion to decline declaratory judgment jurisdiction. *MedImmune* made clear that even when the requirements of Article III are satisfied, courts retain discretion to decline declaratory judgment jurisdiction. *Id.* at 776-77. (remanding for determination whether the district court should or must decline to exercise jurisdiction on the facts of the case); *see also Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1273 (Fed Cir. 2007) (remanding for determination whether district court should decline jurisdiction based on the fact that the matters in dispute could be resolved in another forum).

permitting the suit would severely increase the risk of legitimate advocacy and business promotion in these forums. *Id.*

Here, the statements upon which EchoStar asserts a controversy are statements actually made to the Texas court or that relate to the Texas Action and anticipated contempt proceedings. *See* Complaint ¶ 21. *See also* Bowen Decl. Ex. J (Letter dated May 16, 2008 from TiVo's counsel to Judge Folsom, requesting contempt hearing at the earliest possible date and discovery concerning alleged design-around); *id.* Ex. N at 4 (Conference Call Transcript TIVO - Q4 2008 TIVO INC Earnings Conference Call of Mar. 05, 2008 / 5:00PM ET) ("The court upheld the full monetary award as well as the injunction issued by the trial court. EchoStar's latest attempt to further appeal the case lacks merit. And we believe the court will reject it. We are also very skeptical about EchoStar's claim that it has a work-around. We are confident that the courts will enforce the judgment and the injunction and the full impact of these will become clear.") *id.* Ex. O at 1 (Bear Sterns Media Conference of March 11, 2008 at 1-2); *id.* Ex. P at 4 (Conference Call Transcript, TIVO - Q1 2009 TIVO INC Earnings Conference Call of May 28, 2008 / 5:00PM ET); *id.* Exs. Q, R, S (Reuters article dated Jan. 31, 2008; Bloomberg article dated Jan. 31, 2008; LA Times article dated February 1, 2008, all <u>misquoted</u> in Complaint ¶ 21). Just as allowing suit in *Bell Atlantic* would have chilled advocacy, allowing EchoStar to pursue its claim in Delaware would have the same chilling effect on TiVo, which is alleged to have done nothing more than obtain an injunction, seek to enforce it, and make factual public comment regarding such enforcement efforts.

Allowing a defendant to initiate a new action to address a "controversy" already pending in another court based on factual statements relating to that pending action would chill vigorous advocacy and interfere with the dissemination of truthful information to the investing public. In many patent contempt cases, the issue in a contempt proceeding will be whether the adjudged infringer has adequately designed around a patent. If EchoStar could obtain jurisdiction in any forum it chose based merely on TiVo's statements that it expects to be vindicated by the Texas court, every enjoined infringer would be able to start a new action in another forum to avoid

contempt proceedings and the legitimate maintenance of jurisdiction by the original trial court.

Such an outcome would be inefficient and unjust, and incompatible with sound principles of

judicial administration and patent policy.  Such an outcome would be inconsistent with the

policies of the Declaratory Judgment Act and respect for co-equal courts within a federal system.

3.    **Exercising Jurisdiction Here Would Waste Judicial Resources In A Complex Patent Matter And Would Be Inconsistent With Other Factors Relating To The Appropriate Exercise Of Discretion.**

"In the declaratory judgment context, the normal principle that federal courts should

adjudicate claims within their jurisdiction yields to considerations of practicality and wise

judicial administration." *Wilton*, 515 U.S. at 288; *Nat'l Seminars, Inc. v. Dun & Bradstreet Corp.*

*Found.*, No. 89-2112, 1989 WL 106714, *1 (D. Kan. Aug. 25, 1989) ("[P]rinciples of comity and

efficient judicial administration dictate that when two actions are pending in different federal

district courts, and those actions involve the same parties and the same issues, one of the two

actions should be dismissed or transferred.").

Especially in patent cases, where courts must devote extensive resources to understanding

the patent and the relevant technology, the preservation of judicial resources favors avoiding

duplicative actions.  *Fairplay Elec. Cars, LLC v. Textron Innovations, Inc.*, 431 F. Supp. 2d 491,

493 (D. Del. 2006) (Farnan, J.) (discretionary dismissal is appropriate where a different court

"already has the parties and patents-in-suit before it and has already entered an injunction

relating to those parties and patents."); *MKS Instruments, Inc. v. Advanced Energy Indus., Inc.*,

No. Civ. A. 03-469-JJF, 2004 WL 253470, at *2 (D. Del. July 16, 2004) (Farnan, J.) (holding

trial would be more efficient because of the court's "familiarity with the patent technology");

*Optical Recording Corp. v. Capitol-EMI Music, Inc.*, 803 F. Supp. 971 (D. Del. 1992) (Farnan,

J.) ("The Court is familiar with the relevant technology and the patents. The Court's familiarity

with the subject matter of the litigation will reduce the expenditure of judicial resources in the

handling of this matter."); *Sweetheart Plastics, Inc. v. Ill. Tool Works, Inc.*, 439 F.2d 871 (1st

Cir. 1971) (affirming Massachusetts district court's grant of discretionary dismissal of

declaratory action, where an Illinois district court had already "acquired expertise" and

interpreted the patents in the case, and determined that defendant infringed them). *Cf.*

*Transmation, Inc. v. Gay Eng'g & Sales Co.*, 336 F. Supp. 959, 960 (E.D. Tex. 1971) (refusing

to stay an earlier patent infringement action after a declaratory judgment action was filed because

the earlier litigation had progressed to a stage at which it would be burdensome and unfair to

effect delay).

In this case, the Texas court has already developed substantial expertise relating to the

Barton Patent and the EchoStar technology (most of which EchoStar does not even claim has

changed in a manner material to infringement). Years of complex and hard-fought litigation and

a full jury trial, resulting in affirmance in full as to damages and the injunction, should not be

lightly cast aside simply because EchoStar would rather have a fresh start elsewhere. The federal

courts may rightly act to allocate their resources in more rational ways, especially where, as here,

jurisdiction is discretionary, where EchoStar has formerly chosen to bring its own action against

TiVo in the Eastern District of Texas, *EchoStar Techs. Corp. v. TiVo Inc.*, No. 5-cv-00081-DF-

CMC (E.D. Tex. filed April 29, 2005) (Bowen Decl. Ex. H), and where there is no strong reason

to start a new case in Delaware.

Other equitable principles also favor dismissal. *See Terra Nova Ins. Co. Ltd. v. 900 Bar,*

*Inc.*, 887 F.2d 1213, 1224-25 (3d Cir. 1989) (listing non-exclusive "guidelines" for considering

whether to exercise jurisdiction). Here, a declaratory remedy is not necessary to resolve any

uncertainty of obligations, as such matters are pending in Texas. Greater uncertainty is created

by the maintenance of two actions. The convenience of the parties favors Texas because that is

where the parties have already been litigating, *see* n.1, *supra*, and where the court is already

familiar with the action. The public interest favors maintaining the dispute in a single forum and

not burdening two courts with the same dispute and risking inconsistent rulings. Finally, the

availability and relative convenience of alternative remedies also favors dismissal here so that

the Texas Action may proceed without interference.

Cases should be subject to a sense of finality, and here that cannot happen if EchoStar is

allowed to start anew in a different forum in order to delay the enforcement of an injunction for

another several years. Indeed, if EchoStar's scheme is condoned, EchoStar could arguably always avoid an injunction by alleging to modify its software code and filing a new action after every time it is found to infringe. EchoStar's efforts to avoid judgment and perpetuate litigation must be rejected.[5]

## VI.    CONCLUSION

A willful patent infringer should not be able to start a new action in a new forum concerning matters that will be subject to an ongoing contempt proceeding in another court. The district judge in Texas began presiding over this case four years ago, is actively managing the contempt proceedings, and must be permitted to dispose of the controversy before him without the Defendant seeking shelter in a separate forum. Adjudicated infringers cannot be permitted to jump from jurisdiction to jurisdiction the moment they are forced to face up to the consequences of their infringing conduct and their defiance of court orders.

The Declaratory Judgment Act was not intended to be put to such use. Accordingly, this Court should and must decline to exercise jurisdiction here and EchoStar's complaint should be dismissed.

---

[5] TiVo's motion does not request, in the alternative, that the Court transfer this action to Texas because TiVo does not believe there is any controversy that justifies this separate action, whether in Delaware or in Texas. Moreover, based on years of litigation against EchoStar, TiVo anticipates that EchoStar would use the presence of a separate action to interfere with and to delay the current Texas Contempt Proceeding. In the event that this Court does not dismiss the action, however, TiVo reserves the right to seek such a transfer in the interest of judicial economy at a later time. *See e.g., Nationwide Life Ins. Co. v. Koresko*, No. 2:05cv1066, 2007 WL 2713783, at *6 (S.D. Ohio Sept. 14, 2007) (finding  forum was convenient because other related litigation was pending there); *Int'l Sec. Exch., LLC v. Chi. Bd. Options Exch. Inc.*, No.

ASHBY & GEDDES

*/s/  Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

IRELL & MANELLA LLP
Morgan Chu
Christine Byrd
Laura W. Brill
Alexander C. Giza
William D. Bowen
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated:  July 7, 2008

06-Civ.-13445 (RMB)(THK), 2007 WL 1541087, at *7 (S.D.N.Y. May 24, 2007) (finding forum convenient because party was engaged in other unrelated litigation there).