## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DISH NETWORK CORPORATION (F/K/A ECHOSTAR COMMUNICATIONS CORPORATION), ECHOSTAR DBS CORPORATION, ECHOSTAR TECHNOLOGIES LLC (F/K/A ECHOSTAR TECHNOLOGIES CORPORATION), ECHOSPHERE LLC, AND DISH NETWORK LLC (F/K/A ECHOSTAR SATELLITE LLC), | ) ) ) ) ) ) ) ) **REDACTED -** **PUBLIC VERSION** |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 08-327-JJF ) |
| TIVO INC., A DELAWARE CORPORATION, | ) ) |
| Defendant. | ) ) ) |

## ECHOSTAR'S ANSWERING BRIEF IN OPPOSITION TO TIVO'S MOTION TO DISMISS

Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
John W. Shaw (No. 3362)
jshaw@ycst.com
Adam W. Poff (No. 3990)
apoff@ycst.com
Young Conaway Stargatt & Taylor, LLP
1000 West Street
The Brandywine Building, 17th Floor
Wilmington, Delaware 19899
(302) 571-6600

*Attorneys for Plaintiffs DISH Network
Corporation, EchoStar DBS Corporation,
EchoStar Technologies LLC, Echosphere LLC,
and DISH Network LLC*

*Of Counsel*:

Harold J. McElhinny
HMcElhinny@mofo.com
Rachel Krevans
RKrevans@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
(415) 268-7000

DATED: August 7, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

I.     INTRODUCTION ................................................................................................ 1

II.    NATURE AND STAGE OF PROCEEDINGS ................................................... 3

III.   SUMMARY OF ARGUMENT ........................................................................... 3

IV.    STATEMENT OF FACTS .................................................................................. 3

V.     ARGUMENT ....................................................................................................... 6

       A.   The Texas Action Is Independent From This Action and Cannot
            Resolve the Issues Presented Here. ......................................................... 7

       B.   This Action Serves the Objectives of the Declaratory Judgment
            Act. ............................................................................................................ 9

       C.   This Action Will Not Have a "Chilling Effect" on Contempt
            Proceedings Because a Separate Action is Required for Redesigned
            Products. ................................................................................................... 12

       D.   Delaware is an Appropriate Forum for this Lawsuit. ............................ 13

VI.    CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. TorPharm, Inc.,*
  503 F.3d 1372 (Fed. Cir. 2007)..................................................................................7, 14

*Acumed LLC v. Stryker Corp.,*
  525 F.3d 1319 (Fed. Cir. 2008)...........................................................................................8

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,*
  154 F.3d 1345 (Fed. Cir. 1998)..................................................................................7, 12, 14

*Arbek Mfg. Inc. v. Moazzam,*
  55 F.3d 1567 (Fed. Cir. 1995)...............................................................................8, 9, 12, 14

*Bell Atlantic Corp. v. MFS Commnc's Co.,*
  901 F. Supp. 835 (D. Del. 1995).......................................................................................11

*Capo, Inc. v. Dioptics Med. Prods., Inc.,*
  387 F.3d 1352 (Fed. Cir. 2004).........................................................................................10

*Elecs. for Imaging, Inc. v. Coyle,*
  394 F.3d 1341 (Fed. Cir. 2005)......................................................................................2, 10

*Fairplay Elec. Cars, LLC v. Textron Innovations, Inc.,*
  431 F. Supp. 2d 491 (D. Del. 2006)..................................................................................14

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.,*
  824 F.2d 953 (Fed. Cir. 1987)........................................................................................2, 10

*KSM Fastening Sys., Inc. v. H.A. Jones Co.,*
  776 F.2d 1522 (Fed. Cir. 1985)..............................................................................1, 7, 9, 12, 14

*MedImmune, Inc. v. Genentech, Inc.,*
  127 S.Ct. 764 (2007).......................................................................................................9, 11

*Micron Tech., Inc. v. Mosaid Techs., Inc.,*
  518 F.3d 897 (Fed. Cir. 2008).........................................................................9, 10 ,12, 15

*Read Corp. v. Portec, Inc.,*
  970 F.2d 816 (Fed. Cir. 1992)...........................................................................................13

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.,*
  497 F.3d 1271 (Fed. Cir. 2007)..........................................................................................12

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,*
    127 F.3d 1462 (Fed. Cir. 1997)....................................................................................13

*State Indus., Inc. v. A.O. Smith Corp.,*
    751 F.2d 1226 (Fed. Cir. 1985)....................................................................................13

*WMS Gaming, Inc. v. Int'l Game Tech.,*
    184 F.3d 1339 (Fed. Cir. 1999)..............................................................................12, 13

## I.    INTRODUCTION

EchoStar filed this declaratory judgment lawsuit to obtain a ruling that its redesigned digital-video-recorder (DVR) products do not infringe TiVo's patent. The redesign was the result of an enormous effort within EchoStar to design software to control its DVRs in a manner that was simply not possible when TiVo's patent application was filed. The fundamental premise of TiVo's motion — that infringement issues regarding EchoStar's redesigned DVRs are currently being litigated in the Eastern District of Texas — is wrong. Because this Court is the only judicial forum in which the question of infringement by EchoStar's *redesigned* products has been properly raised by *any* party, it is currently the only venue where that issue can be resolved.

TiVo did not invent the DVR. Rather, TiVo may have solved certain problems regarding DVRs that existed when TiVo filed its patent application nearly ten years ago. EchoStar's redesign uses improved processing power to bypass the problems that the TiVo patent was directed to solving. EchoStar's redesign is substantially different than the products that were the subject of the lawsuit in Texas; it changed the operation of the devices as to several of the key elements in the claims of TiVo's patent. Indeed, EchoStar has obtained opinions from outside counsel that was not involved in the Texas action (from the former Chair of the Fish & Richardson law firm) that the redesigned DVRs do *not* infringe the TiVo patent. Thus, the decision regarding the non-infringement of the redesigned products cannot be made in the context of summary contempt proceedings in Texas.

Federal Circuit precedent — ignored by TiVo's motion — makes it perfectly clear that redesigned products creating substantial open questions of infringement cannot be the subject of contempt proceedings. Due process requires that infringement issues in such cases be resolved in a separate lawsuit. Put simply, EchoStar is "entitled to design around the claims of a patent without the threat of contempt proceedings with respect to every modified device." *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1526 (Fed. Cir. 1985). TiVo's remedy under these circumstances was to file a separate lawsuit or a new complaint accusing the redesigned products.

1

No doubt because it recognizes that the EchoStar redesign does not infringe, TiVo elected *not* to file a separate infringement suit to evaluate the redesign, either in the Eastern District of Texas or anywhere else, despite its public statements that the redesigned EchoStar products infringe. Notably, TiVo's motion to dismiss does *not* question this Court's jurisdiction to hear this case, nor does it request that the case be transferred.[1] Rather, TiVo seeks to have this Court decline jurisdiction over this case in favor of an action in Texas that cannot resolve the issues presented here.

TiVo's conduct is exactly the "extra-judicial patent enforcement . . . scare-the-customer-and-run tactics" that the Federal Circuit has condemned. *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005). EchoStar filed this lawsuit to clear the shadow (caused by TiVo's public statements) from its redesigned DVR products. The Declaratory Judgment Act exists precisely to address such circumstances, *i.e.*, to allow an "allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987). EchoStar has a right to obtain a prompt and efficient declaration regarding its redesigned products.

TiVo's motion ignores binding Federal Circuit law regarding declaratory judgment jurisdiction and the procedures that must be used to determine whether redesigned products infringe a patent. Under that law, the Texas contempt proceeding is independent and will go forward regardless of the existence of this action. But that Texas contempt proceeding cannot resolve the issues that are the subject of this lawsuit. TiVo's motion to dismiss should therefore be denied.

---

[1] TiVo understands that the redesigned DVRs do not infringe. Therefore, it is engaging in procedural maneuvers to deny EchoStar a forum and to delay prompt resolution of the issue. Indeed, TiVo suggests that it intends to file serial briefs regarding issues such as jurisdiction and venue. As any such issues could have and should have been raised in its responsive motion, TiVo's actions can only be designed to delay this case.

2

## II.    NATURE AND STAGE OF PROCEEDINGS

On May 30, 2008, in response to TiVo's statements regarding alleged infringement by Plaintiffs' (collectively "EchoStar") redesigned DVRs, EchoStar filed this declaratory judgment action, alleging that its redesigned DVR products did not infringe TiVo's 6,233,389 patent. (D.I. No. 1.)  On July 7, 2008, TiVo filed this motion. (D.I. No. 13.)

## III.    SUMMARY OF ARGUMENT

EchoStar's newly redesigned DVRs do not infringe the '389 patent. TiVo has nonetheless made public statements that the redesigned DVRs infringe TiVo's patent, and EchoStar filed this action to resolve the uncertainly created by those statements. TiVo's motion is premised on the false assumption that the non-infringement issues raised in this action are already being litigated in Texas. But because EchoStar's redesigned DVRs are substantially different from the DVRs at issue in Texas, Federal Circuit precedent *prevents* the Texas court from using summary contempt proceedings to determine whether the redesigned DVRs infringe. Due process requires a new action to decide that issue, and this case is that new action. EchoStar is entitled to a forum to resolve whether its redesigned DVRs infringe. TiVo should not be allowed to hold the threat of litigation over EchoStar and at the same time deny EchoStar legal redress. TiVo's motion to dismiss should be denied.

## IV.    STATEMENT OF FACTS

As TiVo notes, in April 2006, a jury in Marshall, Texas returned a verdict finding that eight EchoStar DVR models infringed TiVo's '389 patent, the patent at issue in this lawsuit. Upon receiving the verdict, EchoStar began work on a design-around in case an injunction issued and EchoStar did not prevail on appeal. EchoStar's lawyers and engineers faced the challenge of changing the operation of the DVRs without the expensive and disruptive step of recalling millions of set-top boxes installed in customer homes. (Declaration of Dan Minnick ¶¶ 2-3.)

By 2006, nearly eight years had passed since TiVo filed the application that issued as the '389 patent. During that time, the power of central processing units (CPUs) and memory, relative to their price, had increased dramatically. While it remained desirable to minimize the

amount of processing power and memory demanded by a particular design, those constraints were not as limiting as they had been earlier. EchoStar engineers thought that these technological advances might make a new DVR design possible. (*Id.* ¶¶ 2, 15.)

The '389 patent explains that while digital video recording technology was already known in 1998, making a low-cost DVR was challenging "because the processor requirements for keeping up with the high video rates makes the device expensive and problematic." (Declaration of Rachel Krevans Ex. A ('389 patent) at 1:46-49.) The '389 patent purports to solve that problem by employing something called a "Media Switch" (also known as a "parser"). (*Id.* at 2:22-25, 6:16-25, 7:12-18.) The "Hardware Claims" of the '389 patent require a Media Switch that "parses" the incoming television programming data. The Court construed "parse" to mean "analyze." (Krevans Decl., Ex. B (Texas Claim Construction Order) at 17.)

Although the two remaining claims in the Texas litigation — Claims 31 and 61 — do not require the Media Switch, they call for "a physical data source" that "accepts broadcast data from an input device, *parses* video and audio data from said broadcast data, and temporarily stores said video and audio data." (Krevans Decl., Ex. A ('389 patent) at 14:55-58, 18:5-8 (emphasis added).) Thus, all of the claims required this "analysis" function. According to TiVo's infringement expert, EchoStar's accused DVRs satisfied the parsing — or analyzing — function by generating what was referred to as a "table" or "index" that kept track of where frames started and where audio and video components were stored. (Krevans Decl., Ex. C (3/30/06 PM Trial Tr.) at 72:12-74:1; 100:16-103:2; 107:1-13.)

After the verdict, EchoStar conceived of an approach to develop software that performed DVR functions in a radically different way than the hardware and software that had been found to infringe. EchoStar's engineers developed a way to provide DVR functionality without any indexing at all — in other words, without "analyzing" television data prior to storage. Instead of relying on a "Media Switch" or "physical data source" (or any other hardware or software) to assist the CPU by analyzing data *before* storage, EchoStar's new DVR software relies on the brute force of the CPU *after storage* to perform trick-play operations (*i.e.*, pausing, fast-

4

forwarding, etc.). Such a solution is possible, in part, due to the availability of powerful and inexpensive processors. In this "indexless" design, no analysis of the television programming data takes place before storage. The hardware and software that previously performed this analysis was disabled. Instead, the data is stored as it is received, and the new software relies on statistical and probabilistic algorithms, upon playback, to search for and track program data as needed. During playback, the new software generates statistics that are used to determine the ideal number of frames to skip, the number of bytes to seek, and the read size during trick-play operation. EchoStar has applied for a patent on this novel approach to DVR functionality. (Minnick Decl. ¶¶ 2-5, 11-13, 20.)

In addition to parsing and indexing by the Media Switch and the physical data source, the '389 patent further explains that the "automatic flow control" feature of the invention helped reduce the costs then associated with DVR technology by limiting the amount of memory that was required. (Krevans Decl., Ex. A ('389 patent) at 8:60-65.) The patent describes "automatic flow control" as interplay between software objects (namely the source object, transform object, and sink object) filling and emptying a series of buffers to regulate the use of memory. (*Id.* at 8:34-65.) After the verdict, EchoStar's engineers developed a single-buffer record method that lacks automatic flow control for certain DVRs. Because only one buffer is used, the new software does not and cannot stop the flow of incoming data to the buffer.

(Minnick Decl. ¶¶ 3, 10, 13, 20.)

While ultimately successful, EchoStar's redesigned software was by no means easy to develop and implement.

(*Id.* ¶¶ 3, 6-12, 17-18.) The full deployment of EchoStar's new software to millions of set-top

5

boxes of different models was an involved process that took months, beginning in October 2006 and finishing in April 2007. (*Id.* ¶¶ 9, 15, 17-18.) As new software was completed for each set of models, EchoStar rolled it out to subscribers in phases, so that only a subset of customers with a particular model received new software at a given time. (*Id.* ¶¶ 9, 17-18.)

EchoStar also retained Fish & Richardson, which was not involved in the original litigation, to render an opinion as to whether the proposed new designs would infringe the '389 patent. After thorough investigation of the issue, Robert E. Hillman, a Fish & Richardson partner and the former Chairman of the firm, cleared EchoStar's proposed designs, concluding in formal written opinions, supported by detailed analysis, that the new designs do not infringe the '389 patent, either literally or under the doctrine of equivalents. (*Id.* ¶¶ 4, 19 & Exs. A-C.) These opinions issued in August and September of 2006. (*Id.* Exs. A-C.)

In sum, EchoStar has succeeded in replacing the software and hardware that has been found to infringe with new, non-infringing software.

## V.    ARGUMENT

There is a real and concrete dispute between EchoStar and TiVo. EchoStar has redesigned its DVR products and TiVo has made public statements asserting that the redesigned DVRs infringe the '389 patent. (*See, e.g.*, Bowen Decl., Ex. N at 4 ("We are also very skeptical about EchoStar's claim that it has a work-around."); Ex. P at 4 ("We have informed the District Court that based on what we've been provided by EchoStar to date, we believe that EchoStar's modified software does not avoid infringement."). While TiVo effectively concedes that the Court has jurisdiction to hear this controversy, it nonetheless seeks to deny EchoStar *any* forum to resolve infringement issues regarding the redesigned DVRs. EchoStar is entitled to a speedy and efficient resolution of these issues, and there is currently no other court that is capable of addressing those issues. TiVo has elected not to file an action regarding the redesigned DVRs, and EchoStar need not wait for such an action in order to clear the shadow of alleged infringement from its redesigned products.

6

TiVo's motion asserts several arguments that the Court should decline jurisdiction over this dispute regarding EchoStar's redesigned DVRs. None of these arguments is persuasive. For all the following reasons, this Court should deny the motion to dismiss, and this case should move forward in Delaware so that EchoStar may determine its legal rights and obligations.

### A.    The Texas Action Is Independent From This Action and Cannot Resolve the Issues Presented Here.

TiVo asserts that this action is "indistinguishable" from the action in Texas and that this Court "should and must exercise discretion to decline jurisdiction."[2] (TiVo Mot. at 3, 8.) To reach this conclusion, TiVo conspicuously ignores — as it must — any reference to Federal Circuit precedent on redesigned products and the limited role of summary contempt proceedings like the proceeding in the Texas court. This precedent dictates that because there is much "more than a colorable difference" between EchoStar's redesigned DVRs and the products that were found to infringe in Texas, the proceedings in Texas will not, and indeed *cannot*, address the issues that are the subject of this action.

The proper legal framework for evaluating redesigned products in the context of contempt proceedings was enunciated in *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1526 (Fed. Cir. 1985), and was recently summarized by the Federal Circuit:

> [B]efore entering a judgment of contempt of an injunction in a patent infringement case, a district court must address two separate questions. First, the district court must address whether a contempt hearing is an appropriate forum for adjudging whether an allegedly redesigned product is infringing. In doing so, the district court must compare the accused product with the original infringing product. *If there is "more than a colorable difference" between the accused product and the adjudged infringing product such that "substantial open issues with respect to infringement to be tried" exist, contempt proceedings are not appropriate.*

*Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1379-80 (Fed. Cir. 2007) (emphasis added and citations omitted); *see also Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,

---

[2] Because there is clearly a real and immediate dispute regarding the redesigned DVRs, TiVo does *not* assert that the Court lacks jurisdiction, only that it should decline to exercise jurisdiction over this real and immediate dispute created in part by TiVo's public statements regarding EchoStar's redesigned DVR products.

7

154 F.3d 1345, 1350 (Fed. Cir. 1998); *Arbek Mfg. Inc. v. Moazzam*, 55 F.3d 1567, 1570 (Fed. Cir. 1995). Only where the infringing and redesigned products are *not* colorably different can a district court use contempt proceedings to determine whether the "modified device falls within the admitted or adjudicated scope of the claims." *Abbott Labs.*, 503 F.3d at 1380-81 (citations omitted). The Federal Circuit very recently made it clear in the claim preclusion context that there will always be "more than a colorable difference" between two products unless they are "essentially the same." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) ("Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'") (citation omitted).

EchoStar's redesigned DVRs are fundamentally different from the DVRs found to infringe the '389 patent. Trick-play functionality is performed in an entirely different way. Not only are EchoStar's redesigned DVRs not "essentially the same" as the infringing products, they do not satisfy elements of the asserted TiVo claims. As detailed above, the remaining claims in the Texas litigation — Claims 31 and 61 — require that the EchoStar DVRs "parse," *i.e.*, "analyze," the incoming "video and audio data" to infringe. TiVo and its infringement expert accused EchoStar's DVRs of satisfying this step by creating an "index" that kept track of where audio and video components are stored. In contrast to earlier designs, the redesigned DVRs simply *do not* perform the parsing step. They do not create indices, tables, or anything else before storing the audio and video data. Instead, they rely on complex algorithms upon playback, rather than before storage, to perform trick-play DVR features.

Similarly, both Claims 31 and 61 also require "automatic flow control." Again, EchoStar eliminated this step from certain of its DVRs. Instead of using more than one buffer to automatically control the flow of incoming data, EchoStar's redesign uses a single buffer that lacks automatic flow control. Because only one buffer is used in the redesigned DVRs, the new software does not and cannot stop the flow of incoming data to the single buffer, as required by Claims 31 and 61. ████████████████████████████████████████████████████████████████

These changes are not merely cosmetic. Indeed, EchoStar applied for a patent based on the redesigned DVRs. Under the above standards — standards created to "safeguard" an accused infringer's due process rights — summary contempt proceedings *cannot* address whether the redesigned DVRs infringe the '389 patent's claims. *See Arbek Mfg.*, 55 F.3d at 1570 (citing *KSM*). TiVo simply ignores this body of Federal Circuit case law, which prevents contempt proceedings from substituting for a proper comparison of EchoStar's redesign to TiVo's claims.

Instead, TiVo is trying to use the Texas contempt proceedings as a sword to capture the broader DVR technology that its limited '389 patent did not claim, despite EchoStar's good faith efforts to avoid infringement and comply with the Texas court's injunction. *See KSM*, 776 F.2d at 1529 ("The patent owner may not, in contempt proceedings, seek to broaden the scope of the claims which were adjudicated and, thereby, catch the modified device."). TiVo's efforts to deprive EchoStar of a judicial forum to evaluate whether the redesigned DVRs infringe should be rejected. *See Arbek Mfg.*, 55 F.3d at 1570 ("Contempt . . . is not a sword for wounding a former infringer who has made a *good-faith effort to modify a previously adjudged or admitted infringing device* to remain in the marketplace.") (citing *KSM*; emphasis added).

**B.    This Action Serves the Objectives of the Declaratory Judgment Act.**

Declaratory judgment jurisdiction is appropriate where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 771 (2007) (internal citation omitted). As the Federal Circuit has explained, *MedImmune* reshaped declaratory judgment jurisdiction, creating a "more lenient legal standard [that] facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008).

9

The court has discretion to decline to accept a declaratory judgment case, but that discretion is not absolute. *Id.* at 903 (citing *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed. Cir. 1993); *see also Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004). When deciding whether to exercise its discretion, a court should decide whether hearing the case would "serve the objectives for which the Declaratory Judgment Act was created." *Capo*, 387 F.3d at 1355 (internal citation omitted). When those objectives are met, dismissal is "rarely proper." *Micron*, 518 F.3d at 902.

EchoStar filed this action to obtain a prompt judicial ruling regarding its redesigned products. There is no other court that currently has jurisdiction over this issue because it cannot be resolved in summary contempt proceedings in Texas. Recognizing that the redesign does not infringe, TiVo has *not* filed a separate action in Texas. Nevertheless, TiVo has made public statements that call into question the effectiveness of the EchoStar redesign, including conference calls with investors earlier this year. (*See, e.g.*, Bowen Decl., Ex. N at 4 ("We are also very skeptical about EchoStar's claim that it has a work-around."); Ex. P at 4 ("We have informed the District Court that based on what we've been provided by EchoStar to date, we believe that EchoStar's modified software does not avoid infringement."). Having created a cloud over the redesign, TiVo cannot reasonably object to a lawsuit designed to clear the air.

In fact, the Declaratory Judgment Act exists *precisely* for situations such as this. "[T]he purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber*, 824 F.2d at 956. In *Electronics for Imaging*, the Federal Circuit elaborated on the purposes of the Act:

> [A] patent owner . . . attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity . . . . Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could

10

> clear the air by suing for a judgment that would settle the conflict
> of interests.

394 F.3d at 1346 (citation omitted; alterations in original). Through its public statements, TiVo

has attempted exactly the sort of "extra-judicial patent enforcement" for which the Act provides

a remedy. This lawsuit addresses the "uncertainty and insecurity" created by TiVo's public

statements.

In the face of these controlling legal standards, TiVo asserts that the Court cannot rely on

any of TiVo's statements since they were "relate[d] to the Texas Action and anticipated

contempt proceedings." (TiVo Mot. at 12.) TiVo is wrong. TiVo cannot distance itself from its

own public allegations that EchoStar's redesigned DVRs infringe the '389 patent. TiVo

specifically created a cloud over EchoStar's products in the marketplace by making comments to

market analysts. Indeed, TiVo concedes in a footnote in its motion that there is a "case or

controversy" sufficient to support declaratory judgment jurisdiction. (TiVo Mot. at 11 n.4.)

*Bell Atlantic Corp. v. MFS Commnc's Co.*, 901 F. Supp. 835 (D. Del. 1995), does not

support the proposition that the Court should ignore TiVo's statements as it evaluates the

uncertainty TiVo raised about EchoStar's DVRs. As an initial matter, TiVo's reliance on *Bell

Atlantic* makes little sense in light of the fact that it was an antitrust case that interpreted *by

analogy* the now-rejected "reasonable apprehension of suit" standard — a standard abandoned in

favor of the "more lenient" standard outlined by the Supreme Court in *MedImmune*. *Id.* at 847-

48. Moreover, unlike here, the statements in *Bell Atlantic* gave no indication that the risk of a

future antitrust suit against the declaratory judgment defendant was "real and substantial." *Id.* at

846-48. In contrast, TiVo has aggressively pursued enforcement of the '389 patent against

EchoStar and has directly stated that EchoStar's redesigned products are no different from an

infringement standpoint than the previous DVRs.

Finally, the *Bell Atlantic* court did *not* hold that any comments connected to judicial or

regulatory enforcement action cannot be used to demonstrate declaratory judgment jurisdiction.

It held simply that "absent some other indication" of a controversy between the parties, it would

not rely on vague statements made to the FCC that did not themselves indicate that a lawsuit was

11

probable or even likely. *Id.* at 850. Further, many of the statements TiVo seeks to have the Court ignore were not even made by its attorneys as part of the Texas action — they were statements made by TiVo executives to market analysts and the financial press. In other words, contrary to TiVo's assertion, no "vigorous" advocacy is threatened.

This suit is intended to resolve the uncertainty that TiVo has created about EchoStar's new DVRs, one of the primary objectives of the Declaratory Judgment Act. As the Federal Circuit recently noted in *Micron*, "[w]hen these objectives are served, dismissal is *rarely proper.*" *Micron*, 518 F.3d at 902 (emphasis added); *see also Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1287-88 (Fed. Cir. 2007) (reversing denial of declaratory judgment dismissal made on discretionary grounds).

### C. This Action Will Not Have a "Chilling Effect" on Contempt Proceedings Because a Separate Action is Required for Redesigned Products.

TiVo argues that a separate action to assess the infringement issues as to the redesigned products would have a "chilling effect" on contempt proceedings. TiVo's argument again ignores the basic principles underlying contempt proceedings, which are appropriate to address "flagrant disregard" of a court's injunction — *not* to address "substantial open issues" of infringement by redesigned products. *Arbek Mfg.*, 55 F.3d at 1570 (citing and quoting *KSM*). The requirement that a separate action is required to determine whether a substantially redesigned product infringes is not only fair and sensible, it is based on clear Federal Circuit law. *See, e.g., Additive Controls*, 154 F.3d at 1350; *KSM*, 776 F.2d at 1528. The Federal Circuit's prohibition of using summary contempt proceedings to address substantially redesigned products does not "chill" such proceedings. Rather, it balances the rights of both the patentee and the accused infringer. *Arbek Mfg.*, 55 F.3d at 1570 (explaining that *KSM* "accommodates due process" in light of the summary nature of contempt proceedings). Complying with Federal Circuit case law does not have a "chilling effect" on anything.

In contrast, declining jurisdiction under these circumstances would have the adverse impact of undermining incentives to redesign products. As the Federal Circuit has noted, "patent

sf-2545300

law *encourages* competitors to design or invent around existing patents." *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999) (emphasis added). Indeed, design-arounds can be an indicator of good faith. *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997). They spur innovation and promote competition, which benefits consumers. *See, e.g., WMS Gaming*, 184 F.3d at 1355; *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed. Cir. 1992); *see also State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("One of the benefits of a patent system is its so-called 'negative incentive' to 'design around' a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace.").

EchoStar has invested substantial effort into developing and distributing a non-infringing design-around that does not infringe the '389 patent. EchoStar also obtained independent legal opinions that its redesigned products do not infringe. Despite this effort, TiVo has made public statements that the redesigned products infringe. Nonetheless, TiVo has refused to file an action that will address the non-infringement issues, as it must under *KSM* and other Federal Circuit case law. It would chill the salutary goals of redesign and product innovation if TiVo were to be allowed to create a cloud over EchoStar's redesigned DVRs while simultaneously not initiating an action to address those products and denying EchoStar a venue to clear its products in a declaratory judgment action.

**D.    Delaware is an Appropriate Forum for this Lawsuit.**

TiVo attempts to characterize EchoStar's filing of this lawsuit in Delaware (the state in which TiVo is incorporated) as "forum shopping." Because TiVo has made statements regarding EchoStar's redesigned DVRs and declined to file a separate lawsuit to address the supposed infringement of TiVo's patent, EchoStar elected to file a separate lawsuit to vindicate its

sf-2545300

redesigned products. This Court has significant experience with patent infringement actions, and EchoStar believes that it will provide a prompt and efficient resolution of these issues.[3]

Most of TiVo's argument on this point is simply another form of its incorrect argument that this action would interfere with the Texas action. Because the Federal Circuit has made it clear in *KSM*, *Additive Controls*, and *Abbott Labs* that a separate action is required to assess whether a substantially redesigned product infringes, TiVo's argument that this action is an improper "attempt to avoid the proper jurisdiction of another court" is wrong. (Tivo Mot. at 9.) *See, e.g., Arbek Mfg.*, 55 F.3d at 1570 ("[T]he modifying party generally deserves the opportunity to litigate the infringement question at a new trial, 'particularly if expert and other testimony subject to cross-examination would be helpful or necessary.'") (quoting *KSM*, 776 F.2d at 1531.). There is no other court that currently has "proper jurisdiction" over the redesigned products.

TiVo's argument that this case would waste resources is premised on the fiction that infringement issues relating to the redesigned DVRs are currently being litigated in another venue. As a result, its analysis confuses a transfer analysis with dismissal, while at the same time making clear that it is not moving to transfer. (TiVo Mot. at 14-15 & n.5.) TiVo cites cases where courts transferred or dismissed actions where a different, alternative forum could provide the same potential remedies. (TiVo Mot. at 13-14.) For example, in *Fairplay Elec. Cars, LLC v. Textron Innovations, Inc.*, 431 F. Supp. 2d 491, 493 (D. Del. 2006), the court decided there was no case or controversy under the now-rejected "apprehension of suit" standard. As an alternative ground, the court stated that it would also exercise its discretion to decline jurisdiction. In contrast, TiVo does *not* seriously contest that there is a case or controversy (created by TiVo) that supports declaratory judgment jurisdiction. This case is a classic example of the proper use

---

[3] TiVo's claims of "forum shopping" ring particularly hollow in light of it filing the initial lawsuit in the Eastern District of Texas, despite the fact that Texas had virtually no relationship to the lawsuit.

sf-2545300

of the Declaratory Judgment Act. Under such circumstances, the Federal Circuit has explained that dismissal of a declaratory judgment action is "rarely proper." *Micron*, 518 F.3d at 902.

Similarly, TiVo analyzes "equitable" principles such as the convenience of the parties and the familiarity of the Texas court with the '389 patent in an effort to convince this Court that dismissal of this action will result in the same issues being heard in Texas. As outlined above, the contempt proceedings in Texas are independent and *cannot* address whether EchoStar's redesigned DVRs infringe the '389 patent claims.

## VI.    CONCLUSION

EchoStar filed this lawsuit to clear the uncertainty in the market caused by TiVo's public statements regarding EchoStar's redesigned DVRs. No other court can currently resolve this issue, and addressing the non-infringement of these redesigned products will not impact the Texas case. Because the Declaratory Judgment Act was designed for just these sorts of circumstances, the Court should hear this action. TiVo's motion to dismiss should be denied.

sf-2545300

Respectfully submitted,

Dated:  August 7, 2008

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

By: /s/ Adam W. Poff
      Josy W. Ingersoll (No. 1088)
      jingersoll@ycst.com
      John W. Shaw (No. 3362)
      jshaw@ycst.com
      Adam W. Poff (No. 3990)
      apoff@ycst.com
      1000 West Street
      The Brandywine Building, 17th Floor
      Wilmington, Delaware 19899
      (302) 571-6600

*Of Counsel:*

Harold J. McElhinny
HMcElhinny@mofo.com
Rachel Krevans
RKrevans@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
(415) 268-7000

*Attorneys for Plaintiffs DISH Network
Corporation, EchoStar DBS Corporation,
EchoStar Technologies LLC, Echosphere LLC,
and DISH Network LLC*

16

sf-2545300

## <u>CERTIFICATE OF SERVICE</u>

I, Adam W. Poff, Esquire, hereby certify that on August 11, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire
> John G. Day, Esquire
> Tiffany Geyer Lydon, Esquire
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on August 11, 2008, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY E-MAIL**
>
> Morgan Chu, Esquire [mch@irell.com]
> Christine Byrd, Esquire [cbyrd@irell.com]
> Laura W. Brill, Esquire [lbrill@irell.com]
> Alexander C. Giza, Esquire [agiza@irell.com]
> William D. Bowen, Esquire [wbowen@irell.com]
> IRELL & MANELLA LLP
> 1800 Avenue of the Stars, Suite 900
> Los Angeles, CA 90067

YOUNG CONAWAY STARGATT
&  TAYLOR, LLP

/s/ Adam W. Poff
Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
John W. Shaw (No. 3362)
jshaw@ycst.com
Adam W. Poff (No. 3990)
apoff@ycst.com
James Higgins (No. 5021)
jhiggins@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19899
(302) 571-6600

*Attorneys for Plaintiffs*
.

DB02:7102134.1                                                        067462.1001