IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DISH NETWORK CORPORATION (F/K/A ECHOSTAR COMMUNICATIONS CORPORATION), ECHOSTAR DBS CORPORATION, ECHOSTAR TECHNOLOGIES LLC (F/K/A ECHOSTAR TECHNOLOGIES CORPORATION), ECHOSPHERE LLC, AND DISH NETWORK LLC (F/K/A ECHOSTAR SATELLITE LLC), | ) ) ) ) ) ) ) ) ) ) | C.A. No. 08-327-JJF |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| TIVO INC., | ) ) | |
| Defendant. | ) | |

## REPLY BRIEF IN SUPPORT OF TIVO'S MOTION TO DISMISS

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant*

*Of Counsel:*

IRELL & MANELLA LLP
Morgan Chu
Christine Byrd
Laura W. Brill
Alexander C. Giza
William D. Bowen
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated: August 25, 2008

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................. 1

II.    ARGUMENT ...................................................................... 2

    A.     THE TEXAS COURT HAS THE AUTHORITY AND DUTY TO
DECIDE THE ISSUES AT STAKE IN THIS ACTION ................................... 2

        1.     In Ruling On The Contempt Proceeding, The Texas Court
Necessarily Will Address The Issue Of The Validity Of
The Alleged Redesign. ............................................................ 2

        2.     EchoStar Has Already Briefed The Same Issue In The
Texas Court. ...................................................................... 2

    B.     ECHOSTAR'S ACTION IS AN ATTEMPT TO GRANT ITSELF
A "SECOND BITE" IN THE EVENT OF AN ADVERSE
DECISION BY THE TEXAS COURT. ............................................... 4

        1.     Filing This Action Reveals EchoStar's Lack Of Confidence
In Its Alleged Redesign. ......................................................... 4

        2.     EchoStar, Not TiVo, Is Engaging In Improper "Procedural
Maneuvers." ...................................................................... 5

III.   CONCLUSION .................................................................. 8

TABLE OF AUTHORITIES

Page(s)

## Cases

*Abbott Labs. v. TorPharm, Inc.*,
    503 F.3d 1372 (Fed. Cir. 2007)................................................................2

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
    154 F.3d 1345 (Fed. Cir. 1998)..............................................................2

*Apotex Inc. v. Sanofi-Synthelabo*,
    386 F. Supp. 2d 549 (S.D.N.Y. 2005) ....................................................7

*BP Chems. Ltd. v. Union Carbide Corp.*,
    4 F.3d 975 (Fed. Cir. 1993)....................................................................6

*Brine, Inc. v. STX, L.L.C.*,
    367 F. Supp. 2d 61 (D. Mass. 2005) ......................................................5

*Capo, Inc. v. Dioptics Med. Prods., Inc.*,
    387 F.3d 1352 (Fed. Cir. 2004)..............................................................6

*Crosley Corp. v. Hazeltine Corp.*,
    122 F.2d 925 (3d Cir. 1941)....................................................................5

*EMC Corp. v. Norand Corp.*,
    89 F.3d 807 (Fed. Cir. 1996)..................................................................6

*Exxon Corp. v. U.S. Dep't of Energy*,
    594 F. Supp. 84 (D. Del. 1984) ..........................................................2, 7

*Fairplay Elec. Cars LLC v. Textron Innovations, Inc.*,
    431 F. Supp. 2d 491 (D. Del. 2006) .......................................................6

*Farrell Lines Inc. v. Columbus Cello-Poly Corp.*,
    32 F. Supp. 2d 118 (S.D.N.Y. 1997) .....................................................7

*KSM Fastening Sys., Inc. v. H.A. Jones Co.*,
    776 F.2d 1522 (Fed. Cir. 1985)..............................................................2

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118, 127 S. Ct. 764 (2007) ......................................................2

*Optical Recording Corp. v. Capitol-EMI Music, Inc.*,
    803 F. Supp. 971 (D. Del. 1992) ............................................................5

*Tenax Corp. v. Tensar Corp.*,
    19 U.S.P.Q.2d 1881 (D. Md. 1991).........................................................5

## Statutes

28 U.S.C. § 2201................................................................................................6

## I.    INTRODUCTION

EchoStar's Answering Brief to TiVo's motion to dismiss leaves no doubt that EchoStar's complaint before this Court is an improper attempt by an adjudged willful infringer to avoid a contempt citation in the Texas court.  EchoStar has placed before this Court the very same arguments that it has made in Texas—asking this Court to rule that EchoStar's allegedly "redesigned" products are not subject to the Texas court's injunction.  This issue should be decided by the federal judge in Texas who issued the injunction.  Judge Folsom has already handled four years of litigation between TiVo and EchoStar.  He has construed the patent claims and has extensively studied EchoStar's DVR products.  The Texas court is the appropriate forum in which the scope of the Texas injunction should be decided.  EchoStar's complaint here in Delaware and its arguments against dismissal are transparent efforts to interfere with the contempt proceeding by having this Court pass in the first instance on what is within the scope of the Texas injunction and what is not.

EchoStar has cited no authority that even remotely supports the notion that this Court lacks discretion to end such improper tactics by declining to exercise jurisdiction in the unusual circumstances of this case.  Instead, EchoStar falls back on the purpose behind the Declaratory Judgment Act to "clear the shadows" by providing a judicial forum for resolution of patent disputes in the case of one party's "extra-judicial" enforcement.  "Extra-judicial" enforcement is not what prompted EchoStar to sue in Delaware.  EchoStar has sued here to subvert TiVo's ability to place before the Texas court for prompt adjudication the issue of EchoStar's contempt for that court's orders.  Labeling this matter as involving "extra-judicial" enforcement mocks the authority of the Texas court.

EchoStar has provided no compelling reason that this Court should take the unusual step of adjudicating the scope of another court's injunction, especially in a case like this in which the Federal Circuit has already affirmed the injunction, the mandate has issued, and EchoStar's contempt is in active litigation in Texas.  In light of the Federal Circuit's affirmance, much of the contempt proceeding may turn on the law of the case.  While EchoStar may prefer a judicial forum that is unfamiliar with all that has transpired, and made its "dash for Delaware" within an

hour after the Texas court held a hearing regarding the schedule for contempt proceedings precisely to avoid that court's jurisdiction, no sound principle of law or policy demands that this Court approve such maneuvers. Rather, this is precisely the kind of unusual circumstance in which discretion "should [and] must" be declined. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 776-77 (2007).

Accordingly, TiVo's motion to dismiss should be granted.

## II.     ARGUMENT

### A.     THE TEXAS COURT HAS THE AUTHORITY AND DUTY TO DECIDE THE ISSUES AT STAKE IN THIS ACTION.

#### 1.     In Ruling On The Contempt Proceeding, The Texas Court Necessarily Will Address The Issue Of The Validity Of The Alleged Redesign.

EchoStar did not, and cannot, dispute that "[t]he power of a court to supervise and enforce its injunction is part of a court's 'continuing power,' and it is not proper for another district court to entertain an action that would undermine that authority." TiVo's Opening Brief at 10 (quoting *Exxon Corp. v. U.S. Dep't of Energy*, 594 F. Supp. 84, 89 (D. Del. 1984)).

Federal Circuit precedent makes clear that it is the Texas court that has the duty to assess whether EchoStar's allegedly "redesigned" DVRs violate its injunction. *E.g., Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1379-80 (Fed. Cir. 2007); *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1532 (Fed. Cir. 1985). In adjudicating contempt, the Texas court will "address two separate questions. The first is whether a contempt hearing is an appropriate forum in which to determine whether a redesigned device infringes . . . . That decision turns on a comparison of the original infringing product and the redesigned device." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1349 (Fed. Cir. 1998) (citing *KSM*, 776 F.2d at 1530-32). If the court determines that the "redesigned" DVRs do not raise "substantial open issues of infringement," then a contempt proceeding is appropriate. *Id.*

#### 2.     EchoStar Has Already Briefed The Same Issue In The Texas Court.

In its Answering Brief, EchoStar acts as though the Texas court has already made this determination and that it has ruled in EchoStar's favor. *See, e.g.*, Answering Brief at 10 ("There is no other court that currently has jurisdiction over this issue because it cannot be resolved in

summary contempt proceedings in Texas."). Despite EchoStar's self-serving and conclusory statement that "there is much 'more than a colorable difference' between EchoStar's redesigned DVRs and the products that were found to infringe in Texas," *id.* at 7, the Texas court has made no such ruling. Rather, EchoStar has briefed this issue to the Texas court and has asked the Texas court to decide the issue in its favor.

EchoStar's Answering Brief would have this Court accept—on EchoStar's say-so alone—that EchoStar's original DVRs that have been adjudicated to infringe and its allegedly "redesigned" DVRs are more than colorably different in the context of the claims of the Barton Patent. Answering Brief at 4-6, 8-9. Yet that is the very decision that *Additive Controls* and *KSM* place within the jurisdiction of the Texas court in connection with the contempt proceedings regarding new units. That EchoStar has made the identical arguments regarding its "redesign" to the Texas court that it makes now to this Court further demonstrates that EchoStar simply wants two bites at the apple, with this Court instructing the Texas court in the first instance on whether EchoStar's alleged redesign avoids contempt. A copy of EchoStar's brief in the Texas proceedings is attached as Exhibit A hereto and even a quick perusal shows that it is substantively identical to its Answering Brief in this Court.

Ironically, the Texas court ordered that consideration of EchoStar's claimed design-around should be postponed until after decision on a separate contempt question. Order, June 5, 2008 (attached as Exhibit K to Declaration of William D. Bowen (D.I. 14)). EchoStar nevertheless briefed the issue, seeking to place its allegedly "redesigned" DVRs squarely before the Texas court. The Texas court may resolve this issue at a hearing scheduled for September 4, 2008, or it may decide to entertain additional briefing and evidence before making this decision. Either way, EchoStar's Answering Brief confirms that the issues to be decided in the Texas and Delaware actions are the same.

**B.     ECHOSTAR'S ACTION IS AN ATTEMPT TO GRANT ITSELF A "SECOND BITE" IN THE EVENT OF AN ADVERSE DECISION BY THE TEXAS COURT.**

**1.     Filing This Action Reveals EchoStar's Lack Of Confidence In Its Alleged Redesign.**

EchoStar's filing of this action in Delaware is significant in one respect: it demonstrates EchoStar's lack of confidence in its allegedly "redesigned" DVRs.  If EchoStar truly believed in its alleged design-around, it would urge the Texas court to make a quick decision, rather than file a new action asking for that evaluation.  But EchoStar recognizes that a court that is intimately familiar with the parties, the patent, and EchoStar's original infringing products would likely reject its trifling non-infringement arguments.

TiVo has good reason to be skeptical of EchoStar's non-infringement arguments.  For example, EchoStar's major argument is that recent technological advances in the power of central processing units (CPUs) and memory supposedly made its "new" design possible.  Answering Brief at 3-4.  But EchoStar's alleged design-around did not change either the CPU or the memory.  It altered only the software.[1]

EchoStar's other non-infringement arguments depend on claim constructions at odds with Judge Folsom's constructions and even with EchoStar's own trial testimony.  *See* TiVo's Reply In Further Support Of Its Motion For EchoStar To Be Held In Contempt For Violation Of This Court's Permanent Injunction at 8-10 (Ex. B).

EchoStar makes much of the number of hours it spent on its alleged design-around, and the project's cost.  Answering Brief at 5.  Yet, compared to EchoStar's publicly reported consolidated revenues, which approach *$1 billion per month*, or the $226 million it spent on advertising to acquire new customers in 2007 alone, the cost of its "design-around" effort was trivial.  In any event, neither the amount nor the cost of the effort is evidence of non-infringement.

The Texas court, having already expended substantial resources in litigating these issues, should be allowed to enforce its injunction, which the Federal Circuit upheld on appeal.  *See,*

---

[1] Moreover, when TiVo sought to inspect that software, EchoStar refused to produce the basic software programming environment used by EchoStar engineers.

*e.g., Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929-30 (3d Cir. 1941); *Optical Recording Corp. v. Capitol-EMI Music, Inc.*, 803 F. Supp. 971, 974 (D. Del. 1992) (Farnan, J.) ("The Court is familiar with the relevant technology and the patents. The Court's familiarity with the subject matter of this litigation will reduce the expenditure of judicial resources in the handling of this matter."). The Texas court is the proper forum for these arguments, even though it may ultimately decide not to address EchoStar's "redesigned" DVRs in a contempt proceeding. *See, e.g., Brine, Inc. v. STX, L.L.C.*, 367 F. Supp. 2d 61, 67-68 (D. Mass. 2005) (concluding that dispute over new product was appropriate for contempt proceedings, and holding defendant in contempt); *Tenax Corp. v. Tensar Corp.*, 19 U.S.P.Q.2d 1881, 1897-98 (D. Md. 1991) (*after* finding contempt proceedings inappropriate to assess new products, noting that new products "should be the subject of a separate action").

### 2.    EchoStar, Not TiVo, Is Engaging In Improper "Procedural Maneuvers."

Allowing EchoStar to prosecute this action in Delaware will no doubt undermine the Texas contempt proceedings. EchoStar does not say why, as a matter of judicial policy, it makes any sense for a losing and enjoined patent defendant to be able to start a new action on "redesigned" products when the issues of colorable differences and infringement on those very products have yet to be decided by the original judge. Indeed, as discussed in TiVo's moving papers, judicial policy dictates that this Court should and must decline to exercise jurisdiction over this matter.

EchoStar's suggestion that "TiVo concede[d] in a footnote in its motion that there is a 'case or controversy' sufficient to support declaratory judgment jurisdiction," Answering Brief at 11, is incorrect. TiVo has made no such concession. TiVo's Opening Brief clearly states, "TiVo believes that under a correct application of the case or controversy requirement, this Court lacks Article III jurisdiction over this case . . . ." Opening Brief at 11 n.4. TiVo also said that the Court need not reach this issue because it should dismiss the case on statutory grounds based on its discretion provided in the Declaratory Judgment Act even if it could theoretically exercise

jurisdiction as a matter of Article III.  This is a straightforward statement of the law, not a "procedural maneuver."

Moreover, EchoStar all but ignores the substance of TiVo's statutory argument that this Court has discretion to decline jurisdiction over this declaratory judgment action.  28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court . . . *may* declare the rights and other legal relations of any interested party seeking such declaration.") (emphasis added).  TiVo explained why this Court should and must decline to exercise jurisdiction, Opening Brief at 8-15, but EchoStar focuses only on the possibility that an Article III controversy exists.  It does not, because it cannot, explain why it would be inappropriate for the Court to decline to exercise jurisdiction.  Answering Brief at 8-15.

EchoStar acknowledges that "[t]he court has discretion to decline to accept a declaratory judgment case" and contends that discretionary dismissals are rare.  *Id.* at 10.  But the very Federal Circuit authority that EchoStar relies on makes clear that dismissal would be appropriate here.  "The purpose of the declaratory action is to allow a party 'who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side.'"  *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1354-55 (Fed. Cir. 2004) (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993)).  The language that EchoStar relies upon, that discretionary dismissal is "rarely proper," refers only to cases that actually "'serve the objectives for which the Declaratory Judgment Act was created.'"  *Id.* at 1355 (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996)).

This action does not serve the objectives of the Declaratory Judgment Act because EchoStar already has a judicial forum to hear this dispute.  TiVo commenced legal action long ago, and the Texas court is actively conducting contempt proceedings.  Moreover, behavior like EchoStar's—an adjudicated patent infringer engaging in blatant forum shopping to avoid or delay pending contempt proceedings—is much rarer than a discretionary dismissal.  Its tactics make this action ripe for dismissal.  *See, e.g., Fairplay Elec. Cars LLC v. Textron Innovations, Inc.*, 431 F. Supp. 2d 491, 493 (D. Del. 2006) (Farnan, J.) ("[T]he Court concludes that, even if it

did have subject matter jurisdiction over this dispute, the Court would defer to the [other federal court], which already has the parties and patents-in-suit before it and has already entered an injunction relating to those parties and patents." (citing *Exxon*, 594 F. Supp. at 89-91)); *Apotex Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d 549, 551 (S.D.N.Y. 2005) ("'[C]ourts should be dubious of declaratory judgment actions when the plaintiff files suit to interfere with an action already filed.'" (quoting *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 124 (S.D.N.Y. 1997))).  The Texas contempt proceeding is not "extra-judicial," and no independent dispute is created by the fact that TiVo made public statements that it was actively pursuing <u>judicial</u> remedies in that proceeding.

Likewise, EchoStar's charge that TiVo "is engaging in procedural maneuvers to deny EchoStar a forum and to delay prompt resolution of the issue" is plainly untrue.  Answering Brief at 2 n.1.  EchoStar has a forum in Texas before a judge familiar with the technology, the patent, and the claims.  EchoStar's complaint that TiVo has not filed a separate action to litigate the "redesign" issue provides no basis for EchoStar to file one.  TiVo's desire to litigate the "redesign" issue in the Texas contempt proceeding explains why TiVo has not filed a separate action.  It is not because TiVo "[r]ecogniz[es] that the redesign does not infringe," as EchoStar asserts.  Answering Brief at 10.  As for the charge of delay, within an hour of the Texas court saying that it <u>would</u> consider this issue, EchoStar filed this new action in Delaware, despite the fact that a summary contempt proceeding before the Texas court can and will provide for "prompt resolution of the issue."  That this very issue is already before the Texas court also explains why, to EchoStar's apparent surprise, *see* Answering Brief at 2, TiVo has asked this Court to dismiss, not to transfer the case to Texas at this time.

We do not know whether EchoStar intended to have this Court preempt any decision by the court in Texas, or whether EchoStar intended merely to influence the Texas judge's decision by making it appear that the "redesign" was different enough to be worthy of judicial consideration in another district.  Nor can we know whether EchoStar simply intended to use this action as a means to continue operating its business that much longer in the event of an adverse decision in Texas.  What is clear, however, is that this action poses the same issues that the

Texas court will decide and therefore constitutes improper, and prohibited, forum shopping. Certainly it is not TiVo that is engaging in "procedural maneuvers."

## III.    CONCLUSION

EchoStar's arguments against dismissal rely on at least three fictions:  that Federal Circuit precedent strips the Texas court of jurisdiction over EchoStar's "redesigned" DVRs, that EchoStar's "redesigned" DVRs will not be considered in the Texas action, and that EchoStar will be deprived of a forum and will suffer delay and uncertainty if this Court dismisses.  All of these assertions are false.  Dismissal will allow the Texas court to exercise jurisdiction over its own injunction and to determine, more promptly than would be possible in this action, whether the "redesigned" DVRs are within the scope of the injunction.  TiVo respectfully submits that EchoStar's attempt to circumvent the jurisdiction of the Texas court should not be allowed and that this Court should dismiss EchoStar's complaint.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*                                *Attorneys for Defendant*

IRELL & MANELLA LLP
Morgan Chu
Christine Byrd
Laura W. Brill
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated: August 25, 2008

# EXHIBIT A

# Filed Under Seal

# EXHIBIT B

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| TIVO INC., a Delaware corporation | ) | Case No. 2-04CV-01 (Judge Folsom) |
| Plaintiff, | ) | |
| vs. | ) | |
| 1. ECHOSTAR COMMUNICATIONS | ) | |
| CORPORATION, a Nevada corporation, | ) | |
| 2. ECHOSTAR DBS CORPORATION, a | ) | |
| Colorado corporation, 3. ECHOSTAR | ) | |
| TECHNOLOGIES CORPORATION, a | ) | |
| Texas corporation, and 4. ECHOSPHERE | ) | |
| LIMITED LIABILITY COMPANY, a | ) | |
| Colorado limited liability company, | ) | |
| 5. ECHOSTAR SATELLITE LLC, a | ) | |
| Colorado limited liability company, | ) | |
| Defendants. | ) | |
| _____ | ) | |
| AND RELATED COUNTERCLAIMS | ) | |
| _____ | ) | |

**TIVO'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR ECHOSTAR TO BE
HELD IN CONTEMPT FOR VIOLATION OF
<u>THIS COURT'S PERMANENT INJUNCTION</u>**

TABLE OF CONTENTS

Page

I.     INTRODUCTION ...............................................................................................1

II.    EchoStar Cannot Relitigate Infringement Regarding Adjudicated
       Receivers........................................................................................................2

       A.    All Of The DVRs At Issue In This Motion Are Subject To A Final
             Judgment Of Infringement That Is Law Of The Case. ........................2

       B.    U.S. Patent Law Does Not Override The Law Of The Case
             Doctrine.................................................................................................4

III.   The Scope Of The Injunction Was Wholly Appropriate. ................................5

IV.    EchoStar's Other Arguments Lack Merit........................................................7

       A.    The Injunction Is Not Ambiguous. ......................................................7

       B.    EchoStar's Alleged Design Around Does Not Avoid Contempt. ........8

             1.    EchoStar's Technical Arguments Are Procedurally
                   Improper.....................................................................................8

             2.    EchoStar's Non-Infringement Arguments Are Insubstantial. ...................8

       C.    The Permanent Injunction Runs Through Expiration Of The Barton
             Patent, And Cannot Be Satisfied By Momentary Compliance...........10

V.     CONCLUSION.................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Abbott Labs. v. Sandoz, Inc.*
      500 F. Supp. 2d 807 (N.D. Ill. 2007) ................................................................. 5

*Abbott Labs. v. TorPharm, Inc.*,
      503 F.3d 1372 (Fed. Cir. 2007) .......................................................................... 5

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
      2005 WL 1182430, at *6-7 (N.D. Ill. May 11, 2005) ............................... 4, 5, 8

*AFG Indus., Inc. v. Cardinal IG Co.*,
      375 F.3d 1367 (Fed. Cir. 2004) ..................................................................... 3, 9

*Amado v. Microsoft Corp.*,
      517 F.3d 1353 (Fed. Cir. 2008) .......................................................................... 3

*Augustine Med., Inc. v. Progressive Dynamics, Inc.*,
      194 F.3d 1367 (Fed. Cir. 1999) .......................................................................... 7

*Bass Pro Trademarks, L.L.C. v. Cabela's, Inc.*,
      485 F.3d 1364 (Fed. Cir. 2007) .......................................................................... 5

*Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*,
      72 F.3d 872 (Fed. Cir. 1995) .............................................................................. 4

*Central Soya Co. v. Geo. A. Hormel & Co.*,
      723 F.2d 1573 (Fed. Cir. 1983) .......................................................................... 3

*eBay, Inc. v. MercExchange, LLC*,
      547 U.S. 388 (2006) ............................................................................................ 4

*Eli Lilly & Co. v. Medtronic, Inc.*,
      735 F. Supp. 652 (E.D. Pa. 1990) ............................................................... 5, 6, 8

*Engel Indus., Inc. v. Lockformer Co.*,
      166 F.3d 1379 (Fed. Cir. 1999) .......................................................................... 3

*GTE Sylvania, Inc. v. Consumers Union*,
      445 U.S. 375 (1980) ............................................................................................ 4

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
      372 F. Supp. 2d 833 (E.D. Va. 2005) ................................................................. 6

*KSM Fastening Systems, Inc. v. H.A. Jones Co.*,
      776 F.2d 1522 (Fed. Cir. 1985) ................................................................... 4, 5, 6

*Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855 (Fed. Cir. 1988) ............... 5

*Lyons v. Fisher*,
      888 F.2d 1071 (5th Cir. 1989) ............................................................................ 3

Page(s)

*Messinger v. Anderson*,
    225 U.S. 436 (1912)........................................................................................... 3

*Oakley, Inc. v. Sunglass Hut Int'l*,
    316 F.3d 1331 (Fed. Cir. 2003).......................................................................... 7

*Panduit Corp. v. Hellermanntyton Corp.*,
    451 F.3d 819 (Fed. Cir. 2006)............................................................................ 7

*Pfizer Inc. v. Int'l Rectifier Corp.*,
    217 U.S.P.Q. 157 (C.D. Cal. 1982).................................................................... 6

*Roberts v. Cooper*,
    61 U.S. 467 (1857)............................................................................................. 3

*Roche Prods., Inc. v. Bolar Pharm. Co.*,
    733 F.2d 858 (Fed. Cir. 1984)............................................................................ 6

*Star Brite Distrib., Inc. v. Gavin*,
    746 F. Supp. 633 (N.D. Miss. 1990).................................................................. 5

*Stryker Corp. v. Davol Inc.*,
    234 F.3d 1252 (Fed. Cir. 2000)........................................................................ 10

*TiVo Inc. v. EchoStar Commcn's Corp.*,
    516 F.3d 1290 (Fed. Cir. 2008).......................................................................... 2

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
    750 F.2d 1552 (Fed. Cir. 1984).......................................................................... 6

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
    842 F.2d 1275 (Fed. Cir. 1988).......................................................................... 3

*Walker v. City of Birmingham*,
    388 U.S. 307 (1967)........................................................................................... 4

**Statutes**

18 U.S.C. § 401......................................................................................................... 6

35 U.S.C. § 283......................................................................................................... 6

## I.    INTRODUCTION

EchoStar's position is that it has not violated this Court's injunction because it can, on its own, interpret the injunction and again, on its own, decide that the very products that were enjoined are now exempt based on an alleged change.  Were that the law, an injunction could always be violated with impunity because an infringer could always allege some sort of a change here or there and then claim to be outside the injunction.  But the law is to the contrary.

For four years, TiVo litigated against EchoStar to protect its rights under its groundbreaking DVR patent.  The final judgment designates eight EchoStar DVR models as infringing devices.  Dckt. No. 806, Amended Final Judgment and Permanent Injunction ("Judgment").  Based on a detailed weighing of equities, the Court entered an injunction requiring EchoStar, among other things, to disable the DVR functionality in all units of the eight specified DVR models "that have been placed with an end user or subscriber" (the "Adjudicated Receivers").  The Federal Circuit affirmed the infringement judgment as to two claims and affirmed the injunction in full.  The mandate rule and law of the case doctrine now control.  Every Adjudicated Receiver was an infringing product when it was placed with an end user or subscriber, and the DVR functionality in all such units must be disabled.  Relitigation of the Adjudicated Receivers in opposition to a contempt motion is barred by law.

EchoStar does not rely on a single case like this, in which the injunction addresses an products that were installed *prior* to a judgment of infringement and *were expressly enjoined*.  EchoStar relies solely on cases addressing unadjudicated products, i.e., modified units that were first distributed *after* judgment.  Those cases cast no doubt on the propriety of this Court's injunction concerning EchoStar's installed base of Adjudicated Receivers or on the inherent authority of the Court to enforce its order.  EchoStar's argument relies on the fiction that the Adjudicated Receivers morphed into "new" products as a result of an alleged software download – an argument this Court anticipated and rejected two years ago.  The claims at issue cover a process and an apparatus that are fundamental to DVR technology.  These units irreparably damaged TiVo at a critical time in the development of the nascent DVR market, and this Court crafted an appropriate equitable remedy to prevent further harm from EchoStar's infringement.

The injunction here is clear and unambiguous. EchoStar was required to disable the DVR functionality in its illegally installed base of Adjudicated Receivers "until the expiration of the '389 patent." Judgment at 3. EchoStar has not complied. If EchoStar believed the scope of the injunction was improper, it had an opportunity and obligation to raise the issue with the Federal Circuit. But it did not. The mandate having issued, litigation about these units is over. EchoStar's various arguments to the contrary all lack merit. In light of the language of the injunction, EchoStar's argument that it has a meaningful design-around is irrelevant and, in any event, is simply wrong. EchoStar is in contempt.

## II.    EchoStar Cannot Relitigate Infringement Regarding Adjudicated Receivers.

### A.    All Of The DVRs At Issue In This Motion Are Subject To A Final Judgment Of Infringement That Is Law Of The Case.

The requirement that EchoStar disable the DVR functionality in the Adjudicated Receivers applies to the eight models of DVRs that "have been placed with an end user or subscriber" as of the time of judgment. Judgment at 2. The models are specifically identified by model number: DP-501, DP-508, DP-510, DP-522, DP-625, DP-721, DP-921, and DP-942. *Id.* at 1. Every one of these units is subject to a final judgment of infringement affirmed by the Federal Circuit. *Id.*; *TiVo Inc. v. EchoStar Commc'n's Corp.*, 516 F.3d 1290 (Fed. Cir. 2008).

This Court's final judgment and injunction, entered after full briefing and argument, rejected EchoStar's request for a narrower injunction that would have applied only to DVR models with certain software that had been activated for an end user. Dckt. No. 737, EchoStar's Opposition at 17 (asking the court to enjoin only "the provision of infringing DVR software . . . upon activation"); Judgment at 1-2 (adjudging infringement and enjoining identified receivers, not just receivers with certain software). TiVo warned that EchoStar's formulation was an "invitation for . . . mischief." Dckt. No. 747, TiVo's Reply at 11. This Court agreed, and the Federal Circuit affirmed. EchoStar's position now is that its rejected formulation was actually adopted and that only DVRs with certain software are covered by the injunction. EchoStar's position that it can force relitigation as to the Adjudicated Receivers, which are already subject to a final judgment of infringement, is contrary to law.

- 2 -

Under the law of the case doctrine and the mandate rule, the time for arguing about the scope of the injunction has passed. "The mandate rule provides that issues actually decided [on appeal]—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008) (internal quotation marks omitted). "[T]he mandate rule operates as a bar to [a] district court's reconsideration of the initial issuance of [an] injunction" where the judgment appealed from expressly notes that a permanent injunction has been entered. *Id.* at 1360; *see also Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382-84 (Fed. Cir. 1999) (rejection of refund affirmed where underlying order not challenged on appeal).[1]

Without the mandate rule, "there would be no end to a suit [because] every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions." *Roberts v. Cooper*, 61 U.S. 467, 481 (1857). "No litigant deserves an opportunity to go over the same ground twice." *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1580 (Fed. Cir. 1983). This is precisely what EchoStar seeks to do here – to claim error in the injunction's scope when the time for doing so has passed. But EchoStar's argument, that an alleged modification of the original software can automatically remove the Adjudicated Receivers from the scope of the injunction, would undo the judgment of infringement in this case. The judgment was not limited to the original <u>software</u>; rather, the Adjudicated <u>Receivers</u> *en toto* were judged to infringe.[2] The Federal Circuit's mandate encompasses findings of infringement with respect to all of the Adjudicated Receivers (not just software therein), as well as affirmance of this Court's injunction. Defying this Court's order, EchoStar has left the Adjudicated Receivers in place with the DVR functionality fully operational. That is contempt.

---

[1] *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1278 (Fed. Cir. 1988) (law of the case doctrine "judicially created to ensure judicial efficiency and to prevent the possibility of endless litigation"). *See also Messinger v. Anderson*, 225 U.S. 436, 444 (1912) (courts "generally . . . refuse to reopen what has been decided"); *AFG Indus., Inc. v. Cardinal IG Co.*, 375 F.3d 1367, 1372 (Fed. Cir. 2004) (applying law of the case in patent case); *Lyons v. Fisher*, 888 F.2d 1071, 1074 (5th Cir. 1989) (law of the case "must be followed in all subsequent proceedings in the same case in the trial court").

[2] Although Claims 31 and 61 are sometimes referred to as the "software claims," they actually cover a process and an apparatus, respectively, and also contain hardware elements.

**B.     U.S. Patent Law Does Not Override The Law Of The Case Doctrine.**

EchoStar argues that U.S. patent law includes an absolute rule requiring litigation of infringement in all contempt proceedings.  Opp. at 12-14.  This is wrong.  Initially, the argument is simply untenable in the aftermath of the Supreme Court's decision in *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-92 (2006), holding that patent law does not impose rigid rules on the exercise of judicial discretion with respect to injunctions.  It also ignores decades of case law establishing that a party must abide by a judicial order, even if it believes the order is mistaken, unless or until that order is modified or reversed.  *Walker v. City of Birmingham*, 388 U.S. 307, 321 (1967) ("[R]espect for judicial process is a small price to pay for the civilizing hand of law . . . ."); *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 386-87 (1980); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 883 (Fed. Cir. 1995) (affirming contempt order in patent case, stating that defendant "was not free to ignore the court's order" even if it believed it to be improper); *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 2005 WL 1182430, at *6-7 (N.D. Ill. May 11, 2005) (holding patent defendant in contempt for violating injunction prohibiting sales of products with certain product numbers).

Fundamentally, the law does not allow relitigation of infringement with respect to *adjudicated products*.  That issue has concluded and cannot be reopened.  None of the cases that EchoStar cites addresses a product that entered the marketplace as an infringing product, and none concerns ongoing exploitation of an unlawfully installed product base by a willful patent infringer.  *KSM Fastening Systems, Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1523 (Fed. Cir. 1985), for example, involved a consent judgment, not a fully litigated and affirmed judgment of willful infringement.  Moreover, the products subject to the consent judgment were the THERMAL-LOCK products.  On the other hand, the products at issue in the contempt proceeding were the ULTRA-LOK products.  *Id.* at 1523-24.  The decision refers repeatedly to the difference between "the particular device found to be [an] infringement" and modified products that entered the marketplace after judgment.  *Id.* at 1525.  *KSM* casts no doubt on a court's ability to enforce an injunction as to the particular devices found to infringe in the underlying action.  *See id.* at 1527 (distinguishing between "an enjoined device and an accused device"); *id.* at 1530

1893695

- 4 -

(distinguishing between "accused and adjudged devices" and between an "alleged offending device . . . and an enjoined device").  *See also Aero Prods.*, 2005 WL 1182430, at *3-7 (holding defendant in contempt for selling (1) new products that continued to infringe (following *KSM*) and (2) previously enjoined products (following regional circuit law)).

Like *KSM*, EchoStar's other authorities do not involve adjudicated products.  *See Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1383 (Fed. Cir. 2007) (contempt proceeding applied only to new units not before the court when it entered injunction; adjudicated product remained subject to injunction); *Bass Pro Trademarks, L.L.C. v. Cabela's, Inc.*, 485 F.3d 1364, 1367-68 (Fed. Cir. 2007) (contempt proceeding applied only to new units; adjudicated product remained subject to consent decree); *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 856, 867 (Fed. Cir. 1988) (contempt proceeding applied only to new units; original products remained subject to injunction); *Star Brite Distrib., Inc. v. Gavin*, 746 F. Supp. 633, 641 (N.D. Miss. 1990) (contempt proceeding applied only to new units; defendant destroyed existing stock of adjudicated products).[3]

Indeed, the cases upon which EchoStar relies affirm the ability of courts to enforce their orders.  *Abbott*, 503 F.3d at 1383 ("[I]t is settled law that courts possess broad equitable powers to enforce their own decrees."); *KSM*, 776 F.2d at 1528 ("[T]he issue in contempt proceedings is violation *vel non* of the injunction, not patent infringement.").  *See also Eli Lilly & Co. v. Medtronic, Inc.*, 735 F. Supp. 652, 661-62 (E.D. Pa. 1990) (holding defendant in contempt for violating plain language of the injunction without adjudicating infringement, citing *KSM*), *rev'd & vacated on other grounds*, 915 F.2d 670 (Fed. Cir. 1990).

## III.    The Scope Of The Injunction Was Wholly Appropriate.

Even were EchoStar's request to undo the injunction not barred, there is no doubt that the scope of this Court's injunction was entirely appropriate.  It is hardly unusual for a court to enter an injunction that includes broad relief as to adjudicated products.  Courts have issued drastic remedies such as market recalls, even at the preliminary injunction stage.  *Abbott Labs. v. Sandoz, Inc.* 500 F. Supp. 2d 807, 846 (N.D. Ill. 2007).  *See also Trans-World Mfg. Corp. v. Al*

---

[3] EchoStar is free to attempt to design around the patent for newly placed receivers.

*Nyman & Sons, Inc.*, 750 F.2d 1552, 1564-65 (Fed. Cir. 1984) (proposing that district court order defendant to "recall the [infringing products] from its customers").  In a recent case, the court ordered willful patent infringers to "discard or destroy" their infringing products.  *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 372 F. Supp. 2d 833, 842 (E.D. Va. 2005).

In *Eli Lilly*, the court prohibited a defendant from, among other things, "using . . . the data generated from the infringing, manufacture, use, or sale of the [infringing products]."  *Eli Lilly*, 735 F. Supp. at 654.  The court held the defendant in contempt for violating this provision by presenting data about the products at medical meetings.  *Id.* at 658.  The Court rejected the defendant's *KSM*-based argument that "only a showing of 'post-injunction infringement' will support a finding of contempt."  *Id*. at 661.  Because the data itself – while perhaps not infringing – was the fruit of products adjudged to infringe, the court prohibited its use and found contempt when its order was ignored.  The Federal Circuit has endorsed comparable injunctions.  *Roche Prods., Inc. v. Bolar Pharm. Co.*, 733 F.2d 858, 865-66 (Fed. Cir. 1984) (order to destroy all data generated from "infringing activity" may be appropriate form of injunctive relief), *superseded by statute on other grounds*; *see also Pfizer Inc. v. Int'l Rectifier Corp.*, 217 U.S.P.Q. 157, 163 (C.D. Cal. 1982) (order to destroy infringing products and associated data and to withdraw and destroy FDA applications supported by data).  Such rulings are unsurprising, given a court's broad authority to issue and enforce injunctions.  35 U.S.C. § 283 (patent injunctions available "on such terms as the court deems reasonable"); 18 U.S.C. § 401 (broad contempt power); *id.* § 1651(a) (power to "issue all writs necessary or appropriate in aid of" jurisdiction).

The requirement that EchoStar disable the DVR functionality in all Adjudicated Receivers was entirely appropriate.  This Court found that EchoStar's infringement caused irreparable harm to TiVo, including lost market share.  The DVR industry was nascent, and customers that EchoStar acquired as a result of its infringement were "sticky," as DVR users tend not to switch providers.  Dckt. No. 773, Aug. 17, 2006 Order at 10 (Ex. A).[4]  It also found that a narrower injunction applying only to DVRs with particular software would be inadequate to

---

[4] Unless otherwise noted, all exhibits are attached to the Reply Declaration of C. Byrd.

prevent further harm because EchoStar could retain the customers it attracted with its willfully infringing units and perpetuate the infringement under the pretense of an alleged design-around. *Id.* at 6, 8, 11, 13.  EchoStar could force endless litigation and the harm its continued infringement is causing TiVo could never be stopped.  The Court's injunction was carefully and appropriately tailored to prohibit this behavior.

## IV.    EchoStar's Other Arguments Lack Merit.

### A.    The Injunction Is Not Ambiguous.

EchoStar's argument that the injunction is ambiguous lacks merit.  Opp. at 18.  The injunction is a model of clarity.  It requires EchoStar to "disable the DVR functionality . . . in all but 192,708 units of the Infringing Products that have been placed with an end user or subscriber."  Judgment at 2.  It even defined "DVR functionality" so that there would be no doubt that EchoStar was required to disable "all storage to and playback from a hard disk drive of television data," *id.*, and it identified the relevant products by model number and applied the defined term "Infringing Products" as a shorthand term.  *Id.* at 1.  *See also Panduit Corp. v. Hellermanntyton Corp.*, 451 F.3d 819, 826-827 (Fed. Cir. 2006) (reference to specific model numbers in settlement agreement encompassed identified physical products and was not ambiguous); *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370-73 (Fed. Cir. 1999) (language of settlement agreement unambiguously prevented relitigation of issues "related to those goods that were included in the Settlement Agreement").

EchoStar has understood this meaning of the injunction all along, as demonstrated by the statements it made to this Court and the Federal Circuit regarding its scope.  Dckt. No. 737, EchoStar's opp. re judgment at 17 (asking the Court to enjoin only "the provision of infringing DVR software . . . upon activation"); EchoStar's Fed. Cir. reply re stay at 9 ("[I]f the injunction is not stayed, it will prevent EchoStar from providing DVR service . . . ."); EchoStar's Fed. Cir. stay motion at 20 ("If the district court's injunction were not stayed, EchoStar would be required to disable the DVR functionality in DVRs installed in over three million households.").  These statements confirm that the injunction is not ambiguous and was well understood by EchoStar. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1346-47 (Fed. Cir. 2003) (litigation conduct

shows lack of ambiguity); *Aero Prods.*, 2005 WL 1182430, at *6-7 (defendant's objection to injunction language illustrated lack of ambiguity). Moreover, the disablement provision is limited to the Adjudicated Receivers "that have been placed with an end user or subscriber." Judgment at 2. This limitation clearly identifies the units subject to the disablement requirement.

EchoStar's position would make the injunction meaningless because EchoStar could always allege to have made some sort of modification. The Court's language, requiring EchoStar to disable the DVR functionality in all the Adjudicated Receivers – the units already adjudged to infringe – provides a certain end to this case. If EchoStar truly believed the injunction to be ambiguous, it had an opportunity and obligation to raise the issue earlier. "Because [defendant] failed to seek guidance from the court, it acted at its peril." *Eli Lilly*, 735 F. Supp. at 661-62.

### B.    EchoStar's Alleged Design Around Does Not Avoid Contempt.

#### 1.    EchoStar's Technical Arguments Are Procedurally Improper.

As discussed above, EchoStar cannot relitigate infringement as to products already adjudged to infringe. Nor would it be proper to address the issue in this motion, which concerns only whether EchoStar "should be held in contempt for its failure to disable the DVR functionality" in the Adjudicated Receivers, which are already subject to a judgment of infringement. Dckt. No. 829, June 5, 2008 Order at 1 (Ex. B). Furthermore, the Court left for a later date discovery and resolution of technical issues relating to EchoStar's alleged software changes. *Id*. Accordingly, the Court need not reach EchoStar's technical arguments now. But if it does, it should conclude that the purported changes result in no colorable differences and EchoStar continues to infringe.

#### 2.    EchoStar's Non-Infringement Arguments Are Insubstantial.

EchoStar's "technical" arguments are aimed at creating confusion and delay, obscuring the lack of any substantive product change. Most of the arguments concern matters completely unrelated to claims 31 and 61, which are the claims that EchoStar seeks to relitigate. For example, EchoStar contends that recent technological advances in the power of central processing units (CPUs) and memory supposedly made its "new" design possible. Opp. at 2. But EchoStar's alleged design-around did not change the CPU and memory – both hardware

1893695

- 8 -

components – in the Adjudicated Receivers at all.  It altered only the software.  EchoStar also devotes much attention to "indexing," the "Media Switch," and the concept of separation.  Opp. at 3-4 (citing trial testimony relating to claim 1).  But claims 31 and 61 do not include limitations requiring indexing, separation, or a Media Switch.  EchoStar also makes much of the number of hours it spent on its alleged design-around and the cost of those efforts.  But the $750,000 EchoStar spent is hardly "Herculean."  Opp. at 1.  It is not evidence of non-infringement and is trivial in comparison to the $226 million spent in 2007 alone on advertising to acquire new customers at TiVo's expense,[5] while operating under the grace of the stay.  Ex. C.

To the extent EchoStar actually addresses claims 31 and 61, its arguments ignore this court's claim construction and trial testimony – including testimony of EchoStar's own experts.  First, EchoStar argues that its 50X and Broadcom units no longer "parse," i.e., analyze, before they "store" video and audio data.  Opp. at 3-4.  With respect to the 50X boxes,[6] this is the only non-infringement argument, and it cannot survive scrutiny.  "Parse" means "analyze."  Dckt. No. 185, Claim Construction Order at 18 (Ex. D).  It does not mean "index" or "separate."  This claim construction is law of the case.  *AFG Indus.*, 375 F.3d at 1372 (prior claim construction is law of the case).  EchoStar does not contend that the Adjudicated Receivers perform no analysis.  In fact, the opinions of EchoStar's counsel admit that parsing is still performed by "PID filtering," which EchoStar's trial expert agreed meets the parsing limitation.[7]

Second, with respect to the Broadcom boxes (but not the 50X boxes), EchoStar argues

---

[5] EchoStar even had an ad campaign featuring the slogan "Better Than TiVo." Ex. L.

[6] The Adjudicated Receivers fall into two categories:  50X units (DP-501, DP-508, and DP-510) and Broadcom units (DP-721, DP-921, DP-942, DP-522, and DP-625).

[7] *Compare* 8/24/06 opinion letter at 28 (Dckt. No. 826 Ex. 2) ("A Broadcom chip performs packet identifier (PID) filtering . . . .") and 4/7/06 AM Trial Tr. 110:10-14 (Ex. E) ("Q: Okay.  So you'll agree that the EchoStar products do actually parse the MPEG stream?  A:  Yes. The Court said analyze, and there are PID filters in those products that examine the MPEG transport stream and do a parsing.").  *See also id.* at 111:8-13; 4/6/06 PM Trial Tr. 145:3-16 (Ex. F); 4/10/06 AM Trial Tr. 38:2-8 (Ex. G); 4/11/06 AM Trial Tr. 100:6-23 (Ex. H); 3/31/06 PM Trial Tr. 29:18-24 (Ex. I).  EchoStar's products analyze the data at various stages.  PID filtering is one such analysis, which is used to identify the type of packets that should be processed.  The broadcast data is in packets, each of which has a "packet identifier" or PID.  The components that performs the PID filtering are actually named "parsers."  *See, e.g.,* Trial Ex. 478, pp. 1-6, 1-23, fig 1-7 (Ex. J). EchoStar did not eliminate these components.

1893695

that its modified software does not have "automatic flow control" because it "does not and cannot stop the flow of incoming data to the buffer." Opp. at 5. Under the Court's claim construction, however, the term "automatic flow control" does not demand stopping the flow of incoming data. It means only "self-regulated." Claim Construction Order at 24. EchoStar does not dispute that its data pipelines are "self-regulated." Moreover, the opinions of its outside counsel demonstrate that the data flow continues to be self-regulated. 8/24/06 opinion letter at 23 (Dckt. No. 826 Ex. 1) ("The EchoStar software . . . must keep up with the incoming data . . . .").[8] Thus, even the analysis of EchoStar's own counsel demonstrates that EchoStar's alleged design-around lacks substance. These units are not more than colorably different from the Adjudicated Receivers and they continue to infringe. The Court is well within its discretion to find EchoStar in contempt on this ground as well. *Stryker Corp. v. Davol Inc.*, 234 F.3d 1252, 1260 (Fed. Cir. 2000) (decision to proceed via contempt reviewed for abuse of discretion).

### C.    The Permanent Injunction Runs Through Expiration Of The Barton Patent, And Cannot Be Satisfied By Momentary Compliance.

In a last ditch effort to avoid contempt, EchoStar argues that the injunction can be satisfied if the DVR functionality was disabled for a mere instant. Opp. at 9. The language of the injunction, however, provides that it "shall run until the expiration of the '389 patent." Judgment at 3. EchoStar cannot avoid contempt by ignoring the fact that this Court entered a permanent injunction, not an ephemeral one.

## V.    CONCLUSION

EchoStar has avoided the Court's permanent injunction for almost two years and its arguments for continuing its unlawful activities despite the mandate of the Federal Circuit are without merit. TiVo respectfully requests that the Court hold EchoStar in contempt, order it to comply with the language of the injunction, and enter appropriate remedial sanctions.

---

[8] The modification described by the opinion letter includes using a "semaphore" to regulate the operation of the Record Module Software. 8/24/06 opinion letter at 24 (Dckt No. 826 Ex. 1). At trial, the jury was presented with evidence that the 50X products used this same software tool and implementation as part of its "automatic flow control." 3/31/06 AM Trial Tr. 50:8-52:2 (Ex. K) (describing EchoStar's 50X software using semaphores to set the timing of a write operation); 4/7/06 AM Trial Tr. 83:25-84:3 (Ex. E) ("Q. You agree that there are local controls by semaphores that block the threads and wait for a time signal? A. Yes . . . .").

Dated:  July 18, 2008                    Respectfully submitted,


                                  By:  *Christine Byrd*
                                         Christine Byrd
                                  IRELL & MANELLA LLP
                                  Morgan Chu (Pro Hac Vice)
                                  Christine Byrd (Pro Hac Vice)
                                  Laura Brill (Pro Hac Vice)
                                  Andrei Iancu (Pro Hac Vice)
                                  Alexander C.D. Giza (Pro Hac Vice)
                                  1800 Avenue of the Stars, Suite 900
                                  Los Angeles, California 90067-4276
                                  Telephone:     (310) 277-1010
                                  Facsimile:     (310) 203-7199

                                  McKOOL SMITH, P.C.
                                  Sam Baxter (State Bar No. 01938000)
                                  Garret W. Chambers (State Bar No. 00792160)
                                  104 East Houston Street, Suite 300
                                  Marshall, Texas 75670
                                  Telephone: (903) 923-9000
                                  Fax: (903) 923-9099

                                  Attorneys for Plaintiff
                                  and Counterdefendant TiVo Inc.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was served on all parties by electronic service on the 18th day of July 2008.

By: _Christine Byrd_

Christine Byrd