```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE

DISH NETWORK CORPORATION         :
(f/k/a ECHOSTAR COMMUNICATIONS   :
CORPORATION), ECHOSTAR DBS       :
CORPORATION, ECHOSTAR            :
TECHNOLOGIES LLC (f/k/a          :
ECHOSTAR TECHNOLOGIES            :
CORPORATION), ECHOSPHERE LLC,    :
AND DISH NETWORK LLC (f/k/a      :
ECHOSTAR SATELLITE LLC),         : Civil Action No. 08-327-JJF
                                 :
          Plaintiffs,            :
                                 :
     v.                          :
                                 :
TIVO, INC.,                      :
                                 :
          Defendant.             :
```

Harold J. McElhiney, Esquire and Rachel Krevans, Esquire of MORRISON & FOERSTER LLP, San Francisco, California.
Josy W. Ingersoll, Esquire; John W. Shaw, Esquire and Adam W. Poff, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Plaintiffs.

Morgan Chu, Esquire; Christine Byrd, Esquire; Laura W. Brill, Esquire; Alexander C. Giza, Esquire and William D. Bowen, Esquire of IRELL & MANELLA LLP, Los Angeles, California.
Steven J. Balick, Esquire; John G. Day, Esquire and Tiffany Geyer Lydon, Esquire of ASHBY & GEDDES, Wilmington, Delaware.

Attorneys for Defendant.

**MEMORANDUM OPINION**

March 31, 2009
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is a Motion To Dismiss filed by Defendant TiVo, Inc. ("TiVo") (D.I. 12.) For the reasons discussed, the Court will deny Defendant's Motion.

## I. BACKGROUND

Plaintiffs are corporate successors to and affiliates of EchoStar Communications Corporations (collectively, "EchoStar"). TiVo is the owner of U.S. Patent No. 6,233,389 ("the '389 patent"), which pertains to digital video recorder ("DVR") technology. (See D.I. 13 at 1.) In 2004, TiVo asserted the '389 patent against EchoStar in the Eastern District of Texas, and, in April 2006, after a two and a half week jury trial, TiVo secured a verdict that EchoStar willfully infringed the '389 patent. The jury further awarded TiVo roughly $74 million in damages. See TiVo Inc. v. EchoStar Communs. Corp., 446 F. Supp. 2d 664, 665 (E.D. Tex. 2006). Shortly thereafter, the Honorable David Folsom entered a final judgment and a permanent injunction against EchoStar. Id. In January 2008, the Federal Circuit affirmed the judgment and injunction. See TiVo, Inc. v. Echostar Communs. Corp., 516 F.3d 1290 (Fed. Cir. 2008).

Faced with these circumstances, EchoStar alleges that it redesigned its DVRs so that they no longer infringed the '389 patent. (See D.I. 15 at 4-6.) TiVo, however, at a May 2008 status conference before Judge Folsom, took the position that

1

the "products that EchoStar claims to be 'new' are not new, or at best are no more than colorably different that those already found to infringe, and therefore constitute a continuing infringement punishable as contempt." (D.I. 13 at 3.) Based on statements Tivo made during this status conference, and other public statements that TiVo had previously made regarding EchoStar's purported design-around, EchoStar initiated the instant declaratory judgment action to remove the "cloud" of uncertainty surrounding their re-designed products. (See id. at 10-11.) For its part, TiVo pursued contempt proceedings before Judge Folsom, alleging that EchoStar's deployment of redesigned products violated the terms of the injunction. (See D.I. 13 at 3-4.)

## II. THE PARTIES' CONTENTIONS

Starting from the premise that the issues to be decided in this case are "indistinguishable" from those to be decided in the Texas contempt proceedings, TiVo offers three reasons that the Court should exercise its discretion under the Declaratory Judgment Act to dismiss this case. (See D.I. 13 at 8-14.) First, TiVo contends that enforcement of the Texas injunction is part of the Texas District Court's "continuing power" and that the instant declaratory judgment action is nothing more than an attempt by EchoStar to go "forum shopping" and make an "end run" around the authority of the Texas district court. (Id. at 10.)

2

Second, TiVo contends that allowing EchoStar to proceed with this declaratory judgment action would chill vigorous advocacy and the dissemination of truthful information to the investing public. TiVo contends that EchoStar attempts to establish a case or controversy strictly on the basis of statements that TiVo made in connection with the ongoing Texas litigation. It would be inefficient, unjust, and "incompatible with sound principles of judicial administration and patent policy," TiVo contends, if it could be dragged into a far-off Court to defend a completely new action simply by virtue of its statements regarding the ongoing Texas litigation. (Id. at 13.) Finally, TiVo contends that the Texas Court has spent years developing expertise with the '389 patent and the accused products and is thus better equipped than this Court to efficiently resolve any disputes pertaining to EchoStar's allegedly redesigned products. (Id. at 13-14.)

EchoStar responds, first, that this action is independent of the Texas action and presents new issues that cannot be resolved in the Texas action. Specifically, EchoStar contends that because their redesigned products are more than colorably different from the products accused in the Texas litigation, due process and controlling Federal Circuit precedent mandate that any issues pertaining to the redesigned products be settled in a new action rather than contempt proceedings tacked on to a

previous litigation. (See D.I. 15 at 7-8.) In support of this position, EchoStar provides a detailed description of their design-around and submits opinion letters from a prominent patent law firm opining that the redesigned products do not infringe the '389 patent. (See id. at 4-6, 8-9; D.I. 16, Exhs. A-C.)

In response to TiVo's allegations that EchoStar is engaging in improper forum shopping, EchoStar contends that it has chosen to file its declaratory judgment action in a forum having "significant experience with patent infringement actions" that "will provide a prompt and efficient resolution of these issues." (D.I. 15 at 14.) With respect to TiVo's position that this action will have a "chilling effect" on contempt proceedings, EchoStar contends that Federal Circuit precedent mandates that a new action be initiated to address "substantial open issues" of infringement. Complying with the law on this issue, EchoStar maintains, does not "chill" anything. On the contrary, EchoStar contends that being subject to contempt proceedings after redesigning an infringing product chills incentives to design around patents and hence innovate. (Id. at 12-13.)

4

## III. DISCUSSION

### A. Legal Standard

The Declaratory Judgment Act does not create a basis for federal jurisdiction. Rather, jurisdiction must be established in accordance with Article III, Section 2 of the Constitution, and therefore, jurisdiction under the Declaratory Judgment Act requires an actual controversy between the parties. 28 U.S.C. § 2201(a); EMC Corp. v. Norand Corp., 89 F.3d 807, 810 (Fed. Cir. 1996), overruled in part on other grounds, MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007). More specifically, jurisdiction over a declaratory judgment action requires that "the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests and that it be real and substantial and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, 549 U.S. at 126 (citations omitted). Even if the jurisdictional prerequisites of subject matter jurisdiction are otherwise satisfied, the court retains the discretion to determine whether and when to exercise jurisdiction under the Declaratory Judgment Act. Wilton v. Seven Falls Co., 515 U.S. 277, 286-287 (1995). The factors considered by the Court in exercising its discretion include, but are not limited to: (1) whether declaratory relief would

5

clarify and settle the legal relations in issue; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation, (4) the availability and relative convenience of other remedies; and (5) whether the declaratory judgment act is being used for "procedural fencing," "forum shopping," or as a means to provide another forum in a "race" for res judicata. <u>Terra Nova Insurance Co. v. 900 Bar, Inc.</u>, 887 F.2d 1213, 1224 (3d Cir. 1989).

**B.   Analysis**

TiVo argues only that the Court should exercise its discretion to decline jurisdiction over the instant declaratory judgment suit.  Although TiVo has not conceded that there is a genuine case or controversy between EchoStar and TiVo, TiVo has intentionally declined to move for dismissal on this basis.  (<u>See</u> D.I. 14 at 11 n. 4.)  Nevertheless, "the court is obligated to independently assure itself of subject matter jurisdiction over an action" and confirm that there is, in fact, a genuine controversy between the parties.  <u>Bd. of Educ. v. Johnson</u>, 543 F. Supp. 2d 351, 354 (D. Del. 2008).  Based on the parties' litigation history and public statements made by TiVo regarding EchoStar's redesigned products,[1] the Court is satisfied that

---

[1] <u>See</u> D.I. 14, Exh. N at 4 (in a fiscal earnings conference call TiVo's CEO, Tom Rogers, states "[w]e are also very skeptical about EchoStar's claim that it has a work-around" for the '389

6

there is such a controversy. See <u>Pharmanet, Inc.v. DataSci, LLC</u>, No. 08-2965 (GEB), 2009 U.S. Dist. LEXIS 11661 (D.N.J. Feb. 17, 2009) ("Circuit and several other courts have held that a patentee's history of litigation with other parties is an appropriate factor for courts to consider in determining whether subject matter jurisdiction exists under the Declaratory Judgment Act."); <u>Micron Tech., Inc. v. Mosaid Techs.</u>, Inc., 518 F.3d 897, 899 (Fed. Cir. 2008) (a patentee's public statements that all DRAM manufacturers use their patented technology and that they will aggressively seek licenses from manufacturers contributed to the creation of a genuine dispute).

Turning now to the question of whether discretionary dismissal is nevertheless appropriate, the Court is unpersuaded by TiVo's arguments that questions of "forum shopping" or the "chilling" of vigorous advocacy are determinative in this case. With respect to TiVo's allegations of improper forum shopping, the Court notes that although this litigation was initiated in the Eastern District of Texas, Tivo is a Delaware corporation. TiVo has not alleged that personal jurisdiction is lacking in Delaware, and the Court cannot conclude that a plaintiff has

---

patent and that "[w]e are confident that the courts will enforce the judgment and the injunction and the full impact of these will become clear"); id., exh. P at 4 (in a fiscal year earnings conference call, Mr. Rogers states "[w]e have informed the District Court that based on what we've been provided by EchoStar to date, we believe that EchoStar's modified software does not avoid infringement").

7

engaged in improper forum shopping by suing a Delaware corporation in Delaware. Similarly, with regard to the possible "chilling" of vigorous advocacy, the Court agrees with EchoStar that the countervailing policy goals of encouraging patent design-arounds, and hence innovation, are just as compelling. Likewise, the Court agrees with EchoStar that the law, as it stands, inherently provides the framework for "balancing protections for the patentee and the former infringer . . . ." Arbek Mfg. v. Moazzam, 55 F.3d 1567, 1570 (Fed. Cir. 1995).

In these circumstances, to determine whether this Court should exercise jurisdiction over this dispute, the only relevant question is whether the instant dispute is, under the law, properly handled through the contempt proceedings currently ongoing in the Texas litigation. To make this determination, the Court "must compare the accused product with the original infringing product. If there is more than a colorable difference between the accused product and the adjudged infringing product such that substantial open issues with respect to infringement to be tried exist, contempt proceedings are not appropriate." Abbott Labs. v. Torpharm, Inc., 503 F.3d 1372, 1380 (Fed. Cir. 2007) (citations and internal quotations omitted).

However, on the current record the Court is unable to make a concrete determination as to whether the re-designed products

present more than a "colorable difference" over the infringing products. To support the position that their re-designed products differ substantially from the infringing products, EchoStar submits the Declaration of their Vice President of Software, Dan Minnick, who sets forth the changes EchoStar made to their infringing products. (See D.I. 17.) In addition, EchoStar provides opinion letters from the Fish & Richardson law firm opining that EchoStar's re-designed products do not infringe the '389 patent. (See D.I. 16, Exhs A-C.) Based on this evidence, the Court is unable to conclude that there is not a colorable difference between the re-designed products and the infringing products. However, to the Court's knowledge, TiVo has not an opportunity for significant discovery on the re-designed products, and, in fact, TiVo claims that EchoStar has refused to produce some discovery pertaining to the re-designed products. (See D.I. 22 at 4 n.1.) Ultimately, TiVo may in fact be able to show that there is not a "colorable difference" between the re-designed products and the products accused in this action. However, in the Court's view, whether TiVo is ultimately able to make this showing is a decision best made by Judge Folsom given his experience with this case and the technology at issue. However, considerations such as these do not present an adequate basis upon which to dismiss a case outright. Rather, considerations pertaining to Judge Folsom's

expertise with this matter and potential gains in judicial efficiency are most appropriately considered in the context of a transfer pursuant to 28 U.S.C. § 1404(a), which the Court now raises <u>sua sponte</u>.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "A court's authority to transfer cases under 28 U.S.C. § 1404(a) does not depend upon the motion, stipulation or consent of parties to the litigation." <u>Clopay Corp. v. Newell Cos.</u>, 527 F. Supp. 733, 737 (D. Del. 1981). However, "[f]ailure to afford parties adequate notice and opportunity to be heard on a district judge's contemplated <u>sua sponte</u> transfer would in most, if not all, cases violate the parties' due process rights." <u>Id.</u> at 738. Accordingly, as set forth in the Order accompanying the Memorandum Opinion, the parties shall address whether this case should be transferred to the Eastern District of Texas.[2]

## CONCLUSION

For the reasons discussed the Court will deny Defendant's Motion To Dismiss.

An appropriate Order will be entered.

---

[2] In the Court's view, TiVo should have raised an alternative motion to transfer with the instant Motion.